## RICE *v.* AMES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 420. Submitted December 17, 1900.—Decided February 25, 1901.

.An appeal lies directly to this court from a judgment of the District Court
in a *habeas corpus* case, where the constitutionality of a law of the
United States, or the validity or construction of a treaty is drawn in
question.

A complaint before a commissioner in a foreign extradition case, if made
solely upon information and belief, is bad; but it need not be made upon
the personal knowledge of the complainant, if he annex to such complaint
a copy of the indictment found in the foreign country, or the deposition
of a witness having personal knowledge of the facts, taken under the
statute.

Where the first count of a complaint charged the offence solely upon in-
formation and belief, and the subsequent counts purported on their face
to aver offences within the personal knowledge of complainant, it was held
that the insufficiency of the first count did not impair the sufficiency of
the others, and that the complaint vested jurisdiction in the commis-
sioner to issue his warrant.

Continuances of the examination may be granted in the discretion of the
commissioner, and, in this particular, he is not controlled by a state
statute limiting such continuances to ten days.

The act of Congress authorizing Circuit Courts to appoint commissioners
is constitutional.

THIS was an appeal by Fred Lee Rice, Frank Rutledge and
Thomas Jones from an order of the District Court for the
Northern District of Illinois, denying their application for a
discharge upon a writ of *habeas corpus,* the object of which
writ was to test the validity of certain proceedings against the
appellants, taken before a commissioner for that district, spe-
cially authorized to take jurisdiction of proceedings for the
extradition of persons charged with crimes, under treaties with
foreign governments.

The proceedings before the commissioner are set forth in a
bill of exceptions, signed by the district judge.

The first warrant for the arrest of the appellants was issued June 2, 1900, upon complaint made upon information and belief, by "a police officer of the city of Chicago," and an affidavit of a police detective of the city of Toronto, Canada, also upon information and belief, charging defendants with sundry crimes committed both at Aurora and at Toronto, in the Province of Ontario. Pursuant to this warrant appellants were taken by the respondent, Ames, as United States marshal, out of the custody of the city police, by whom they had been arrested the day before, and brought before the commissioner. Proceedings were adjourned until June 4, when the case was dismissed, and a new warrant issued upon the complaint of Albert Cuddy, police detective of the city of Toronto, also upon information and belief. Defendants moved to quash this complaint and warrant by reason of the fact that the complaint was made upon information and belief, which was denied, and the proceedings adjourned until June 14. Defendants were committed for further hearing. Upon that day, it appearing that the proceedings had been taken only for the purpose of provisional apprehension and detention, the case was dismissed, and a new and final complaint made by William Greer, a government detective for the Province of Ontario, duly authorized by the Attorney General of the province to act as the agent of the government in the prosecution of extradition proceedings.

This complaint contained four counts, the first of which charged the defendants, upon information and belief, with stealing from the post office building, in the town of Aurora, a quantity of Canadian postage stamps, $55 in money and certain certificates in mining stock. The other three counts, in which the charge was made absolutely and not upon information and belief, charged the defendants first, with stealing a horse, cart and harness; second, with breaking and entering a private bank in the town of Aurora with intent to steal, and also with the larceny of certain money in the bank; and third, with breaking into a shop on Queen street in the city of Toronto. A new warrant was issued upon this complaint, and the examination adjourned until June 25, at which time defendants were brought before the commissioner and motion made for their discharge

for want of jurisdiction, and for insufficiency of the complaint. This motion being denied, the case went to a hearing upon certain documents certified by the American consul, and a large number of depositions of witnesses which were not sent up with the record. The examination was continued for several days, and finally upon July 10 the commissioner found there was probable cause to believe the defendants guilty, and ordered them to stand committed to await the action of the proper authorities.

Whereupon, and upon the same day, petitioners sued out this writ of *habeas corpus* from the District Court, and from the order of that court, denying their discharge, they took an appeal directly to this court.

*Mr. S. H. Trude* for appellants.

*Mr. Lynden Evans* for appellee.

Mr. Justice Brown, after making the above statement of the case, delivered the opinion of the court.

1. Motion is made to dismiss the appeal upon the ground that there is no provision of law allowing an appeal in this class of cases. Prior to the Court of Appeals act of 1891, provision was made for an appeal to the Circuit Court in *habeas corpus* cases " from the final decision of any court, justice or judge inferior to the Circuit Court." Rev. Stat. sec. 763; and from the final decision of such Circuit Court an appeal might be taken to this court. Rev. Stat. § 764, as amended March 3, 1885, c. 353, 23 Stat. 437.

The law remained in this condition until the Court of Appeals act of March, 1891, was passed, the fifth section of which permits an appeal directly from the District Court to this court " in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question." In this connection the appellee insists that an appeal will not lie, but that a writ of error is the proper remedy. In support of this we are cited to the case of *Bucklin v. United States,* 159 U. S. 680, in which

the appellant was convicted of the crime of perjury, and sought a review of the judgment against him by an appeal, which we held must be dismissed, upon the ground that criminal cases were reviewable here only by writ of error. Obviously that case has no application to this, since under the prior sections of the Revised Statutes, above cited, which are taken from the act of 1842, an *appeal* was allowed in *habeas corpus* cases. The observation made in the *Bucklin* case that " there was no purpose by that act to abolish the general distinction, at common law, between an appeal and a writ of error," may be supplemented by saying that it was no purpose of the act of 1891 to change the forms of remedies theretofore pursued. *In re Lennon*, 150 U. S. 393 ; *Ekiu* v. *United States*, 142 U. S. 651 ; *Gonzales* v. *Cunningham*, 164 U. S. 612. As a construction of the extradition treaty with Great Britain is involved, the appeal was properly taken to this court.

2. The first assignment of error is to the effect that the commissioner issuing the warrant had no jurisdiction, because the complaint of Greer was upon information and belief, and not such as was required by the treaty, or by section 5270 of the Revised Statutes. The first two complaints, which were dismissed, as well as the first count of the complaint under which the proceedings were finally had, were obviously insufficient, since the charges were made solely upon information and belief, and no attempt was made even to set forth the sources of information or the grounds of affiant's belief. This is bad, even in extradition proceedings, which are entitled to as much liberality of construction in furtherance of the objects of the treaty as is possible in cases of a criminal nature. Nor is it saved by the fact that Greer described himself as government detective for the Province of Ontario, and duly authorized by the Attorney General to act as the agent of the government to prosecute extradition proceedings. *Ex parte Smith*, 3 McLean, 121, 135 ; *Ex parte Lane*, 6 Fed. Rep. 34 ; *In re Young Mfg. Co.* (1900), 2 Ch. 753.

A citizen ought not to be deprived of his personal liberty upon an allegation which, upon being sifted, may amount to nothing more than a suspicion. While authorities upon this

subject are singularly few, it is clear that a person ought not to be arrested upon a criminal charge upon less direct allegations than are necessary to authorize the arrest of a fraudulent or absconding debtor. *Smith* v. *Luce*, 14 Wend. 237; *Matter of Bliss*, 7 Hill, 187; *Proctor* v. *Prout*, 17 Mich. 473. So, too, in applications for injunctions, the rule is that the material facts must be directly averred under oath by a person having knowledge of such facts. *Waddell* v. *Bruen*, 4 Ed. Chan. 671; *Armstrong* v. *Sanford*, 7 Minnesota, 49.

We do not wish, however, to be understood as holding that, in extradition proceedings, the complaint must be sworn to by persons having actual knowledge of the offence charged. This would defeat the whole object of the treaty, as we are bound to assume that no foreign government possesses greater power than our own to order its citizens to go to another country to institute legal proceedings. This is obviously impossible. The ordinary course is to send an officer or agent of the government for that purpose, and Rev. Stat. sec. 5271, makes special provision that "in every case of complaint and of a hearing upon the return of the warrant of arrest, any depositions, warrants, or other papers offered in evidence, shall be admitted and received for the purpose of such hearing if they shall be properly and legally authenticated so as to entitle them to be received as evidence of the criminality of the person so apprehended, by the tribunals of the foreign country from which the accused party shall have escaped, and copies of any such depositions, warrants or other papers, shall, if authenticated according to the law of such foreign country, be in like manner received as evidence," of which authentication the certificate of the diplomatic or consular officer of the United States shall be sufficient. This obviates the necessity which might otherwise exist of confronting the accused with the witnesses against him. Now, it would obviously be inconsistent to hold that depositions, which are admissible upon the hearing, should not also be admitted for the purpose of vesting jurisdiction in the commissioner to issue the warrant. Indeed, the words of the statute, "in every case of *complaint*," seem to contemplate this very use of them. If the officer of the foreign government has no personal knowl-

edge of the facts, he may with entire propriety make the complaint upon information and belief, stating the sources of his information and the grounds of his belief, and annexing to the complaint a properly certified copy of any indictment or equivalent proceeding,· which may have been found in the foreign country, or a copy of the depositions of witnesses having actual knowledge of the facts, taken under the treaty and act of Congress. This will afford ample authority to the commissioner for issuing the warrant.

But while, as already observed, the first count is bad, by reason of its unsupported allegations upon information and belief, the second count contains a wholly different charge of larceny of a horse, cart and harness; the third, of breaking and entering a private bank in Aurora; and the fourth, of breaking and entering a building in Toronto. Each of these counts charges a distinct offence, and each purports on its face to be made upon the personal knowledge of the complainant. While it is possible that he may have intended to make all these charges upon information and belief, the natural intendment of the last three counts is that the affiant swore to facts within his personal knowledge. If it be true, as stated by writers upon criminal procedure, (Bishop, Crim. Proced. § 429,) that each count must be sufficient in itself, and averments in one cannot aid defects in another, it would seem to follow by parity of reasoning that defects in one ought not to impair the sufficiency of another. Upon the whole we think the complaint is sufficient.

3. By the second assignment, petitioners insist that the commissioner lost jurisdiction in the premises by continuing the proceedings from June 14 to June 25, a period of eleven days, in supposed violation of section 67, article 7 of chapter 79 of the Revised Statutes, of Illinois, governing continuances by justices of the peace and examining magistrates, which enacts that " the justice before the commencement of the trial may continue the case *not exceeding ten days* at any one time on consent of the parties or on any good cause shown." It is insisted that this statute controls proceedings before commissioners of the United States in extradition cases, by virtue of the treaty and of the several acts of Congress prescribing the duties of com-

missioners. The treaty only provides in article 6, (26 Stat. 1508, 1510,) that "the extradition of fugitives under the provisions of this convention and of the said Tenth Article" (of the treaty of August 9, 1842) "shall be carried out in the United States and in Her Majesty's dominions respectively, in conformity with the laws regulating extradition for the time being in force in the surrendering States." This evidently contemplates the laws of the United States regulating extradition, and has no reference whatever to the laws of the particular State within which the proceedings are taken.

Provision is made by Rev. Stat. sec. 627 for the appointment of commissioners of the Circuit Court, now called United States Commissioners, act May 28, 1896, c. 252, sec. 19, 29 Stat. 140, 184, who shall exercise such powers as may be conferred upon them. By Rev. Stat. sec. 727, they are vested with such authority "to hold to security of the peace and for good behavior in cases arising under the Constitution and laws of the United States, as may be lawfully exercised by any judge or justice of the peace of the respective States, in cases cognizable before them." This evidently defines the extent of their powers and not the mode in which such powers are to be exercised. By section 1014, they are vested with the power to arrest, imprison or bail offenders "for any crime or offence against the United States" "agreeable to the usual mode of process against offenders in such State," that is, the State wherein the offender "may be found." That this has no application to continuances before commissioners in extradition proceedings is evident, first, by the fact that the section is confined to crimes or offences against the United States, and, second, because it refers only to the usual mode of *process* against offenders in such State, and not to the incidents of the examination. To hold that the commissioner is confined in the matter of continuances to the methods prescribed for justices of the peace and other magistrates of the particular State would be utterly destructive of his power in cases arising beyond the seas, where weeks might be required to obtain the attendance of witnesses, or the procurement of properly authenticated depositions for use upon the examination. Clearly there is nothing either in the treaty or the stat-

utes requiring commissioners to conform to the state practice in that regard. The only requirement seems to be that arising from the tenth section of the Ashburton Treaty, that the fugitive shall only be surrendered " upon such. evidence of criminality as, according to the laws of the place where the fugitive or person so charged, shall be found, would justify his apprehension and commitment for trial, if the crime or offence had there been committed."

4. The fifth assignment questions the constitutionality of Rev. Stat. sec. 5270, first, because it does not provide for any mode of procedure relating to continuances, change of venue, bail, etc., before commissioners appointed in extradition matters ; second, because Congress had no power to confer upon a District Judge of the United States authority to create such inferior courts ; third, because Congress has not created such court and established its jurisdiction. We are unable to appreciate the force of this objection. Congress having provided for commissioners, who are not judges in the constitutional sense, had a perfect right under article 2, section 2, paragraph 2 of the Constitution, to invest the District or Circuit Courts with the power of appointment. The only qualification required of a commissioner to act in extradition cases is that suggested by Rev. Stat. section 5270, that he shall be " authorized so to do by any of the courts of the United States." We know of no authority holding that Congress may not vest the courts with this power, and we are reluctant to create one.

The other assignments question the power of the commissioner to deny bail, which becomes immaterial here, as well as the finding of the District Judge upon the facts, which is not examinable upon a writ of *habeas corpus.* There is nothing, too, in the additional assignment that the commissioner took the matter under advisement and abused his discretion in the matter of continuance, of which we see no evidence.

There are also noticed in appellants' brief certain objections to the complaint, which might have been successfully urged against a formal indictment for the same offence, but which do not constitute " a plain error not assigned or specified," of which, under rule 21 of this court, subdivision 4, we may take notice

at our option in the absence of a special assignment. The technicalities of an indictment are not requisite in a complaint. *State* v. *Holmes,* 28 Connecticut, 230; *Commonwealth* v. *Keenan,* 139 Mass. 193; *Rawson* v. *State,* 19 Connecticut 292; *Keeler* v. *Milledge,* 24 N. J. Law, 142; *Williams* v. *State,* 88 Ala. 80; *State* v. *McLaughlin,* 35 Kan. 650.

Petitioners have no just reason to complain of the action of the District Court in remanding them to the custody of the marshal, and its judgment is therefore

*Affirmed.*