George P. DE HARDIT, Appellant,

v.

UNITED STATES of America
Appellee.

No. 6975.

United States Court of Appeals
Fourth Circuit.

Argued June 13, 1955.

Decided July 16, 1955.

See also, 120 F.Supp. 110.

674

Richard L. Williams, Richmond, Va. (Leith S. Bremner, Richmond, Va., on brief), for appellant.

James R. Moore, Asst. U. S. Atty., Richmond, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

George P. DeHardit, a practicing attorney of long experience at Gloucester Court House, Virginia, was convicted of wilfully and knowingly attempting to defeat and evade a large part of the income tax owing by him to the United States for the year 1946 by filing a false and fraudulent income tax return. He was sentenced to serve an imprisonment of one year and to pay a fine of $5,000; and he has appealed to this court solely on the ground that the prosecution was barred by limitations under the terms of 26 U.S.C. § 3748, in that it was not instituted within six years after the commission of the offense.

The crime was committed when the fraudulent return was filed with the Collector of Internal Revenue at Richmond, Virginia. The defendant contends that the return was filed not later than March 17, 1947 and that the prosecution was begun more than six years later on March 20, 1953 when the United States Attorney filed a sworn complaint with the United States Commissioner and requested him to issue a summons to the defendant. The position of the Government is that the return was not actually received at the office of the Collector until March 20, and hence the prosecution was begun in time since the time elapsed between the commission of the offense and the institution of the prosecution is calculated by omitting the day on which the offense occurred, and including the day on which the prosecution is begun.[1] The statute provides that where, as in this case, a complaint is instituted before a Commissioner of the United States within the period of limitations, the time shall be extended until the discharge of the Grand Jury at its next session within the District. The next session of the Grand Jury in this case began on April 6 and ended October 5, 1953. The indictment was filed by the Grand Jury on April 9, 1953.

1. United States v. Mathis, D.C.N.J., 28 F.Supp. 582; Wiggins v. United States, 9 Cir., 64 F.2d 950, certiorari denied 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569; Burnet v. Willingham Loan & Trust Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448.

An alternative contention of the defendant is that the summons issued by the United States Commissioner on March 20, 1953 was in violation of the Fourth Amendment and therefore void, because it was not based upon probable cause supported by oath or affirmation, and hence the prosecution was not begun until the indictment was found by the Grand Jury. The position of the United States on this point is that the provisions of the Fourth Amendment are directed to the issuance of warrants for the search of houses and effects and the seizure of persons, and that no warrant but only a summons was issed in this case, and that in any event the action of the Commissioner was based upon probable cause supported by the oath of the United States Attorney who had personal knowledge of the facts.

These questions were brought to the attention of the District Judge by a motion of the defendant to dismiss the indictment as barred by limitations and evidence was taken. The District Judge filed a carefully prepared opinion in which he made the following findings with respect to the date on which the income tax return was filed. He said:

"Evidence introduced by the defendant showed the following facts which I find proven: On March 15, 1947, the defendant came to the office of a local accounting firm in Richmond where he furnished an accountant information necessary to prepare his income tax return for the calendar year 1946. The return was prepared and signed by the defendant in the accountant's office and the defendant delivered to the accountant his check to cover the tax computed to be forwarded with the return to the Collector. The accountant, after affixing his signature as the person who prepared the return, delivered it to an employee of his firm to be mailed. After signing the return and supplying the accountant with the check, the defendant left the office to return to his home approximately fifty miles from Richmond. While no one in the office of the accounting firm had any independent recollection of actually placing the return in the mail, the records of the office indicate that it was placed in the Post Office in Richmond on March 15, 1947, in an envelope addressed to the Collector, at Richmond. This proof convinces me that the return was actually placed in the Post Office in Richmond on March 15, 1947.

Testimony introduced by the Government shows that the return was actually received in the Collector's Office in Richmond on March 20, 1947. While no one was able to testify as to the actual receipt of the return, it was shown that the practice of the office of the Collector at that time was to separate the mail received in the period around March 15 according to the date on which it came into the office and to mark the various bundles of mail with the date of receipt. Later when the envelopes were opened each return was stamped as received on the date corresponding to that shown. The receipt stamp of the Collector shows that this return was received on March 20, 1947. The evidence causes me to conclude that the return was actually received in the Collector's office on the last mentioned date.

The return having been made on the basis of the calendar year was required to be filed on or before the 15th day of March, 1947. Title 26, Section 53(a) (1). However, subsection (2) of the last mentioned statute provides that the Commissioner of Internal Revenue may grant a reasonable extension of time for filing returns under the rules and regulations approved by the Secretary of the Treasury and it was testified that for the specific year in question a return received on March 20 was regarded administratively as being filed within the time limit. * *"

The defendant attacks this finding as contrary to the weight of the evidence. He points out that it was conclusively shown that the return was prepared by the accountant and signed and left by the defendant in Richmond on March 15 to be filed by the accountant with the Col-

lector in that city; and that there was evidence tending to show that on the same day the paper was placed in the hands of an employee of the accountant to be mailed and that it was the practice of the office to deposit returns in the post office promptly when they are prepared on or near the due date; and that the Post Office Building was adjacent to and connected with the office of the Collector by a tunnel and that the Collector's mail was placed in movable containers and pushed through the tunnel and delivered to the Collector at his offices on the fourth floor; and that a letter addressed to the Collector and deposited in the post office at Richmond on Saturday, March 15 would have been delivered to him in the ordinary course of business on Monday, March 17.

This evidence is not without persuasive force, but there was countervailing proof. Not only was there wanting any witness who had personal recollection of placing the return in the post office on March 15, but there was positive evidence that the return of the defendant bore the receipt stamp of the Collector's office showing that it was received by him on March 20, and that it was the practice of the Collector to stamp each bundle of mail, containing approximately 100 items, with the date of its receipt, and to stamp the same date upon each return when it was taken from its envelope. In view of this testimony, it is clearly impossible for us to say that the District Judge was wrong when he made' the ultimate finding that the defendant's return was actually received by the Collector the last mentioned date. We considered on a somewhat similar state of facts in Kiker v. Commissioner, 4 Cir., 218 F.2d 389.

The evidence, bearing on the contention that the complaint filed by the United States Attorney on March 20, 1953 was invalid, was not controverted. United States Commissioners are authorized by 18 U.S.C. § 3045 to issue warrants of arrest for violations of internal revenue laws upon the complaint of the United States Attorney; and preliminary proceedings with respect to the issuance of complaints and warrants in a criminal prosecution are regulated by Rules 3 and 4 of the Federal Rules of Criminal Procedure, 18 U.S.C., which are as follows:

"Rule 3. The Complaint

"The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a commissioner or other officer empowered to commit persons charged with offenses against the United States."

"Rule 4. Warrant or Summons upon Complaint

"(a) Issuance. If it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it. Upon the request of the attorney for the government a summons instead of a warrant shall issue. More than one warrant or summons may issue on the same complaint. If a defendant fails to appear in response to the summons, a warrant shall issue."

In the pending case the United States Attorney, acting under the instructions of the Department of Justice, appeared before the United States Commissioner on March 20, 1953 and presented a complaint in which he charged that the defendant "did wilfully and knowingly attempt to defeat and evade a large part of the income tax due and owing by him to the United States for the calendar year 1946, by filing and causing to be filed a false and fraudulent income tax return wherein he stated that his net income for said year was the sum of $17,254.49 and that the amount of tax due thereon was $4,383.88, whereas, as he then and there well knew, his net income for said year was $27,921.60, upon which said net income he owed to

the United States an income tax of $9,729.77. And the complainant further stated that he believes there are material witnesses in relation to this charge." The United States Commissioner administered an oath to the United States Attorney who swore that the facts stated in the complaint were true and, in accordance with his usual custom in similar cases, requested the Commissioner to issue a summons instead of a warrant of arrest, and thereupon the Commissioner issued a summons to the defendant to appear before him on April 15, 1953. The defendant, however, did not appear because in the meantime the indictment was filed on April 9, 1953.

The United States Attorney made an oath to the facts set out in the complaint, and did not purport to be acting upon information and belief. As a matter of fact, he had personal knowledge of the facts set out in the complaint since he was present before the Grand Jury in April, 1952, when the same case was previously considered, and heard the defendant, who also appeared before the Grand Jury at his own request, testify at length. The United States Commissioner, however, did not question the United States Attorney as to the sources of his information when the summons was issued, but assumed that the United States Attorney, as the prosecuting officer of the court, had sufficient knowledge to make the complaint and swear to it.

■ The argument of the defendant rests upon the ground that it is the historic function and duty of a committing magistrate before issuing a warrant of arrest for crime to make inquiry of the complainant in order to ascertain whether there is probable cause to believe that a crime has been committed, and that the offender is the party against whom the warrant is sought. Chitty's Blackstone, Vol. 2, Ch. 21, pp. 234–5; or as Judge Hincks puts it in United States v. Dolan, D.C.Conn., 113 F.Supp. 757, 761, the United States Commissioner is a judicial outpost in our constitutional structure of defense against arbitrary executive action and is often the first judicial officer responsible for the enforcement of the prohibition of the Fourth Amendment against the issuance of warrant except upon probable cause supported by oath or affirmation. Hence it becomes the duty of the Commissioner, when complaints are made only upon information and belief, to make inquiry of the complainant as to the sources of his information and the grounds of his belief so as to enable the Commissioner to determine in his own mind whether there is probable cause to believe that an offense has been committed, and thereby avoid the issuance of process and the arrest of an accused upon the mere suspicion of an irresponsible person. See Rice v. Ames, 180 U. S. 371, 21 S.Ct. 406, 45 L.Ed. 577; United States ex rel. King v. Gokey, D.C.N.D.N.Y., 32 F.2d 793.

■ Bearing these rules in mind, however, we do not think it can be said that the complaint filed in this cause by the United States Attorney and the summons of the Commissioner based thereon were invalid and ineffective to mark the beginning of the prosecution. It may be noted at the outset that the case does not run counter to the prohibition of the Fourth Amendment against unreasonable seizures of the person because no arrest of the defendant was sought by the Government or authorized by the Commissioner, and no arrest was actually made upon the complaint; but even if it be assumed that rule 4 of the Rules of Criminal Procedure makes the prohibitions of the Fourth Amendment applicable to summons as well as to arrest, the Commissioner was justified in issuing the summons in this case upon the affidavit of the qualified prosecuting officer who was especially authorized by the statute to institute the prosecution and purported to act upon actual knowledge of the facts and not merely upon information and belief. A similar conclusion was reached by Judge Hincks in the Dolan case. We do not doubt that it

would be the better part of wisdom for the Commissioner in every case to make inquiry, in order to ascertain the extent of the complainant's knowledge, so as to be assured of the existence of probable cause. Had he done so in this instance the present contention could not have been made; but it cannot be said that he acted without probable cause in issuing the summons merely because he accepted the affidavit of the United States Attorney at its face value and did not cross examine him as to the extent of his knowledge. In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, the court said: "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

Affirmed.