**Veto GIORDENELLO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16065.

United States Court of Appeals Fifth Circuit.

Jan. 31, 1957.

Rehearing Denied May 17, 1957.

Rives, Circuit Judge, dissented.

Clyde W. Woody, William H. Scott, William F. Walsh, Houston, Tex., for appellant.

Malcolm R. Wilkey, U. S. Atty., C. Anthony Friloux, Jr., James T. Dowd, James E. Ross, Asst. U. S. Attys., Houston, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal from the conviction of appellant of the offense of unlawfully purchasing five ounces of heroin, in violation of Section 4704, I.R.C.1954, 26 U.S.C.A.,[1] presents the single question whether the trial court erred in admitting in evidence the heroin which was found on his person when he was arrested. The answer to this question in turn hinges on the legality of Giordenello's arrest.

On January 26, 1956, William T. Finley, an enforcement agent for the Bureau of Narcotics, obtained from the United States Commissioner in Houston, Texas, a warrant for the arrest of Giordenello on a complaint sworn to by Finley and asserting that Veto Giordenello did receive, conceal, etc. narcotic drugs, to wit: heroin hydrochloride, with knowledge of unlawful importation, in violation of 21 U. S.C.A. § 174.[2] At 6 P.M. the following day, having seen Giordenello several times meanwhile and having followed

1. "§ 4704. *Packages*
"(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

2. The complaint is here reproduced:
"Before William H. Costa, Houston, Texas, The undersigned complainant being duly sworn states: That on or about January 26, 1956, at Houston, Texas in the Southern District of Texas,
Veto Giordenello
did Receive, Conceal, etc., Narcotic Drugs, To-wit: Heroin Hydrachloride with Knowledge of unlawful Importation: in violation of Section 174, Title 21, United States Code.
And the complainant further states that he believes that .................. are material witnesses in relation to this charge.
(s) Wm. Thomas Finley,
William Thomas Finley
Narcotic Agent."

him to a residence other than his own, Finley and another agent waited for him to reappear. He did so about half an hour later, coming out of the back of the house, going into a garage, and then emerging and approaching the gate in the fence of the backyard. They identified themselves and put him under arrest, asserting they did so under the above described warrant, and took from him a paper package he was carrying in his hand containing five ounces of heroin. After being warned of his rights, appellant freely admitted the possession, telling the officers he had obtained the heroin in Chicago and that he had adulterated it and put it into small "bindles" or packets. He was later indicted and tried for purchasing these five ounces of heroin, which of course could not be the offense for which the warrant had been issued.

Before the trial, appellant filed a motion to suppress the evidence of the officers relating to the seizure and admission of the possession as well as the heroin itself. The ground for such motion was that appellant was searched without a search warrant and without probable cause. The court overruled the motion to suppress. The case proceeded to trial before the court without a jury and resulted in a judgment of guilty and sentence of eight years for a second offense.

The real basis of the attack on the admissibility of the evidence is appellant's contention that the seizure was made without a search warrant (which is, of course, undisputed) and that it was not permissible as incidental to an arrest under United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, and earlier cases, because the arrest was illegal. This was so, appellant says, because the arrest either was not made under the warrant issued on January 26th, or if it was, then the warrant was void.

Taking these latter two points in reverse order, we shall consider first the contention that the warrant was void when the arrest was made. Appellant contends that a warrant can be issued by the United States Commissioner, or judge, only upon a complaint sworn to by the prosecuting witness, stating the essential facts constituting the offense charged;[3] that the complaint here, fn. 2, supra, did not contain a statement of the essential facts; and that upon the taking of the testimony of the affiant it was apparent that the statements made by him were not within his personal knowledge, but must have been based upon information furnished by others.

The Government counters by saying that the allegation of receiving and concealing heroin hydrochloride with knowledge of unlawful importation was substantially in the words of the statute,[4] and that this was sufficient to state the crime of which appellant was charged. Further the Government says that so long as the complaint is sworn to positively and not on information and belief, it is immaterial on the question of validity of the warrant that the officer did not acquire his knowledge of the facts from personal observation. Finally the appellee takes the position that the preliminary hearing is the place to raise all questions as to the validity of the arrest, and a waiver of such hearing makes such defense unavailable to the accused later in the trial.

In view of the fact that the ground for our decision makes unnecessary an inquiry into the questions whether the arrest was actually made on the warrant; whether the complaint contained an adequate statement of the essential facts; and whether the warrant was valid if issued without the personal knowledge of the affiant of the facts asserted, we go

3. This is in accord with Rule 3, Federal Rules of Criminal Procedure, 18 U.S. C.A., which provides:
  "The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a commissioner or other officer empowered to commit persons charged with offenses against the United States."

4. 21 U.S.C.A. § 174.

directly to the final point made by the Government.

When, as here, a person is arrested upon a warrant issued on a complaint he must be brought before the nearest United States Commissioner, without unreasonable delay.[5] It then becomes the duty of the Commissioner to inform the defendant of the charge and of his right to a preliminary hearing at which he can inquire into the probable cause of the arrest. If the defendant waives preliminary examination the Commissioner holds him forthwith to answer in the district court.[6]

Here appellant was represented by counsel at his commitment hearing, and, as authorized under the rules, he waived preliminary examination, a proceeding at which he would have had full opportunity to test out the sufficiency of the complaint and legality of the warrant and the legality of his arrest under it or the presence of probable cause if arrested without a valid warrant.

We are much persuaded by the language of the opinion in United States v. Walker, 2 Cir., 197 F.2d 287, certiorari denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679, where the court dealt with the three important points here at issue: Sufficiency of the complaint as to statement of essential facts; sufficiency of the complaint as to the personal knowledge of the offense; and the waiver of defects in the complaint by waiving preliminary examination. There the court said:

> "The appellant contends that his arrest was illegal because (1) the complaint did not set forth 'the essential facts constituting the offense charged,' as required by Rule 3, F.R. Cr.P.; (2) the complaint did not set forth the source of the government agent's information. Taking up these points seriatim, it appears that the complaint, printed in the margin, substantially follows the statutory language of the offense charged, 18

U.S.C.A. § 2314. Since an indictment in the words of the statute may be sufficient, Carter v. United States, 10 Cir., 173 F.2d 684, certiorari denied 337 U.S. 946, 69 S.Ct. 1503, 93 L.Ed. 1749, a complaint in the same form may likewise be; such is the case here. Point (2) seems to be answered by the fact that on its face the complaint appears to be based on personal knowledge of the complainant. See Rice v. Ames, 180 U.S. 371, 376, 21 S.Ct. 406, 45 L.Ed. 577. When arraigned before the commissioner in Maryland the appellant could have challenged the complaint on the ground that the complainant did not have personal knowledge, but his waiver of examination and consent to removal would, in our opinion, preclude a later assertion that the complaint was not sustained by legally competent evidence. In our opinion the appellant has not established that his arrest was illegal."

United States v. Walker, 2 Cir., 197 F.2d 287, at page 289. To be sure, the waiver in the Walker case was held by the court to apply only to the raising of the objection to the fact that the affiant did not have personal knowledge of the facts alleged. We can see no basis for not applying the same rule to the other objection, the sufficiency of the statement of fact. Both are based on the same provision of the Fourth Amendment to the Constitution, and neither is less subject to waiver than the other. Nothing to the contrary appears in the opinion of Judge Augustus N. Hand in the district court case of United States v. Ruroede, D.C.S.D.N.Y., 220 F. 210, 213. In that case there was no suggestion of the gist of the offense of which the defendant was charged, and the court properly held there would be no waiver, because the invalidity was plain on the face of the complaint and warrant. Here there is no such defect. There can be no

---

5. Fed.Rules Cr.Proc., Rule 5(a), 18 U.S. C.A.

6. Fed.Rules Cr.Proc. Rule 5(b, c), 18 U.S. C.A.

serious contention made that Giordenello was not clearly apprised of the offense for which he was arrested.

■ We conclude therefore that if there were defects in the warrant and if the arrest was made without proper warrant or probable cause, which we discuss later but do not here decide, such defects could have been inquired into at the preliminary examination; that the waiver by appellant of the preliminary examination constituted a waiver of any such defects, and that he will not be permitted to raise the issues by motion later.

Much can be said moreover in support of the other points on which the Government relies to sustain the trial court's action.

■ As to the sufficiency of the statement of the offense, it is difficult to comprehend what more would be necessary to apprise Giordenello of the offense of which he was charged than the language of the statute here used in the complaint. This is legally sufficient. Brown v. United States, 9 Cir., 222 F.2d 293. The warrant would therefore not be invalid for this reason.

■ As to the objection that it must affirmatively appear that the officer made the complaint on his own personal knowledge, it has been held by the Supreme Court that if a complaint purports to be on the knowledge of the affiant this is sufficient to authorize the issuance of the warrant. Rice v. Ames, 180 U.S. 371, 21 S.Ct. 406, 45 L.Ed. 577; United States v. Walker, supra; and see the language of the Supreme Court in the recent case of Costello v. United States, 350 U.S. 359, where on page 363, 76 S.Ct. 406, on page 409, 100 L.Ed. 397, the Court, speaking of the validity of an indictment based entirely on hearsay testimony said:

"An indictment returned by a legally constituted and unbiased grand jury, *like an information drawn by the* prosecutor, if valid on its face,

is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." (Emphasis added.)

It is difficult to see how a strict rule nullifying a complaint because based partially on the evidence of others can now be urged in the light of the Costello case in which the sole issue was whether an indictment based wholly on hearsay evidence was valid.

■ As to the delay in the use of the warrant, nothing has been cited to cause us to hold that, once armed with a warrant valid on its face, an officer is denied the right to execute it at a time when he can catch the accused "with the goods." There was evidence of reports coming to Finley that caused him to believe Giordenello would obtain heroin from Chicago. He placed him under surveillance for weeks. Giordenello disappeared and later returned; he was driving an expensive automobile bearing an Illinois license; he drove to the place where he was arrested with a local suspicious character following him in another car bumper to bumper.[7] These facts would not have been sufficient to justify the use by Finley of the warrant solely as "an investigative technique," if by that it was meant that it was obtained not for the purpose of arresting Giordenello for the commission of the offense charged, but as an excuse to search him. Finley swore positively that such was not the case. Moreover, there was enough in the record to make it clear that an honest official might well have thought he was fully observing the legal restraints placed upon his actions, and that he had good cause for arrest even if the warrant already obtained was invalid since he believed he saw a felony being committed in his presence—a belief that subsequent events proved to be true.

We recite these facts in spite of our holding that the waiver was sufficient

---

7. While this evidence could not be admitted as proof of guilt, it was admissible to show the reasonableness of Finley's waiting and selecting the particular time and place to arrest Giordenello.

to meet the objections raised by appellant because it is clear from the record as a whole that no injustice is being worked on the accused by holding him to his waiver.

Many roadblocks to the swift visitation of punishment on even such criminals as purveyors of heroin are, and must be, thrown up to assure a full measure of constitutional protection for the accused. That this sometimes makes difficult the apprehension and punishment of the guilty must be accepted as one of the prices we pay for constitutional government. There is a limit, however, beyond which the courts should not go. That limit, we think, has been reached when as in this case the person accused was accorded every opportunity to be informed of the nature and source of the charge against him, to test out the validity of his arrest and the strength of the Government's case in a preliminary hearing, and, having waived these privileges, he still had the right to a jury trial on the merits.

We think the evidence was properly admitted by the trial court and the judgment is

Affirmed.

RIVES, Circuit Judge (dissenting).

The arrest and search of the appellant were, I think, clearly contrary to the provisions of the Fourth Amendment:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Courts are under a solemn, an almost sacred, duty to defend the Constitution, and should never succumb to the temptation to countenance a violation of that amendment in order to apprehend or punish one guilty of a crime.[1] Otherwise, ultimately the clear provisions of that section of our Bill of Rights will become no more than a dead memorial to a liberty so dearly bought by our ancestors, and so uselessly expended by later and softer generations.

"Uselessly expended" because, when officers are trained to understand the Fourth Amendment, it presents no real obstacle to efficient law enforcement, but simply requires the interposition of a neutral and detached magistrate between a policeman or a zealous government enforcement agent and the right of privacy of an individual citizen.[2]

The explicit language of the Amendment itself leaves no doubt possible that it covers warrants of arrest as well as search warrants, and it has often been so held.[3]

---

1. "The protection of the Fourth Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent." Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 6, 70 L.Ed. 145; see also, United States v. Lefkowitz, 285 U.S. 452, 464, 52 S. Ct. 420, 76 L.Ed. 877; Worthington v. United States, 6 Cir., 166 F.2d 557, 562.

The statement just made in the body of the opinion is not intended to imply any belief or doubt on my part but that my brothers are trying to follow the Constitution just as sincerely as I am. To the contrary, I have complete confidence in their honesty, intellectual and otherwise.

2. Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436; Rent v. United States, 5 Cir., 209 F.2d 893, 898; Clay v. United States, 5 Cir., 239 F.2d 196.

3. Ex parte Burford, 3 Cranch 448, 7 U.S. 448, 453, 2 L.Ed. 495; Albrecht v. United States, 273 U.S. 1, 5, 47 S.Ct. 250, 71 L. Ed. 505; McGrain v. Daugherty, 273 U.S. 135, 156, 47 S.Ct. 319, 71 L.Ed. 580; Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374; De Hardit v. United States, 4 Cir., 224 F.2d 673, 677; Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556, 557; Worthington v. United States, 6 Cir., 166 F.2d 557, 562; United States v. Horton, D.C.W.D.Mich., 86 F.Supp. 92, 97.

In the present case, the complaint of the narcotic agent upon which the warrant was issued (copied in footnote 2 to the main opinion) contained no more than the bare conclusions of the officer practically in the language of the statute. My brothers adopt the holding of the Second Circuit that,

"Since an indictment in the words of the statute may be sufficient, Carter v. United States, 10 Cir., 173 F.2d 684, certiorari denied 337 U.S. 946, 69 S.Ct. 1503, 93 L.Ed. 1749, a complaint in the same form may likewise be; such is the case here." United States v. Walker, 2 Cir., 197 F.2d 287, 289.

With deference, I submit that that holding is a non-sequitur. The case cited by the Second Circuit in support of the holding, Carter v. United States, 10 Cir., 173 F.2d 684, passed upon the validity of an indictment as a *pleading*, and did not involve the validity of an arrest. It referred to the provision of the Sixth Amendment that, "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." As a matter of pleading, when the statute embodies all the elements of the crime, an indictment following substantially the wording of the statute meets the requirements of the Sixth Amendment, and, "If the defendants wanted more definite information * * *, they could have obtained it by requesting a bill of particulars." United States v. De Brow, 346 U.S. 374, 378, 74 S.Ct. 113, 116, 98 L.Ed. 92; see, also, Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 40 L.Ed. 606.[4] The added "probable cause" requirement of the Fourth Amendment for the issuance of a warrant is rarely applied to indictments or informations, though occasionally bench warrants do issue upon them. In each such instance, however, the existence vel non of probable cause is not left to the arresting officer, but there is interposed the Grand Jury in the case of indictments, the United States Attorney in the case of informations, and in all cases the court before issuing the bench warrant. As said by Judge Prettyman in Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556, 558:

"For a warrant to be issued upon a complaint probable cause must appear from the complaint, and, of course, probable cause is inherent in an indictment or information."

The "probable cause" requirement of the Fourth Amendment as a prerequisite to the issuance of a warrant is different and in some ways more stringent than the pleading or notice requirements of the Sixth Amendment.

A United States Commissioner acts in a judicial capacity and should issue a warrant only upon competent evidence. The facts, and not the complainant's conclusion from the facts, should have been before the commissioner. Worthington v. United States, 6 Cir., 166 F.2d 557, 565. What was said by the First Circuit in Giles v. United States, 1 Cir., 284 F. 208, 214, is true here:

"In this case, as no facts whatever were put before the commissioner, he was ousted from his judicial function, and remitted to a performance purely perfunctory. The prohibition agent was applicant, affiant, in effect the judge of the existence of probable cause, and the officer serving the writ. This is a very dangerous amalgamation of powers."

See, also, United States v. Ruroede, D.C. S.D.N.Y., 220 F. 210, 212.

Nowhere has the requirement been stated more clearly than by Judge Bryant in United States ex rel. King v. Gokey, D.C.S.D.N.Y., 32 F.2d 793, 794:

"The commission of a crime must be shown by facts positively stated before a commissioner has jurisdiction to issue a warrant of arrest.

---

4. Appellant's first opportunity to apply for a bill of particulars came after his arrest and search had been effected.

This protection is guaranteed to every person by the Constitution (Fourth Amendment) through the provision that 'no warrant shall issue, but upon probable cause, supported by oath or affirmation.' This safeguard of liberty has been jealously protected by all courts. And well it should be, for it would be intolerable to allow a warrant of arrest to be issued upon the opinion, conclusion, or suspicion of some person, unsupported by facts. The 'oath or affirmation' required is of facts, not opinions or conclusions. The complaint must be supported by proof, so that the magistrate may exercise his judgment or discretion in determining that an offense has been committed, and that there is probable cause to believe the accused guilty of the commission thereof."

If by simple rote in copying the language of the statute, and without any facts in support of his conclusions, the complaining officer could supply the "probable cause" required by the Fourth Amendment, then indeed has that requirement become purely formal and ritualistic and utterly deficient as a real and genuine protection to the privacy of the individual for which it was intended.

"United States commissioners are inferior officers." Go-Bart Importing Co. v. United States, 282 U.S. 344, 352, 51 S. Ct. 153, 156, 75 L.Ed. 374. They have such authority only as is conferred upon them by valid statute or rule. Their authority to issue warrants of arrest is that prescribed by Rules 3 and 4(a), F.R. Crim.Proc.:

"Rule 3. *The Complaint*

"The complaint is a written statement of *the essential facts constituting the offense charged.* It shall be made upon oath before a commissioner or other officer empowered to commit persons charged with offenses against the United States." (Emphasis supplied.)

"Rule 4. *Warrant or Summons upon Complaint*

"(a) *Issuance. If it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it,* a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it." (Emphasis supplied.)

Thus, "probable cause" must appear "from the complaint" itself, and the "essential facts" must be stated in the complaint. In the safeguarding of such fundamental human rights, the rules wisely leave nothing to speculation nor to oral testimony as to what was before the commissioner.

The officer testified positively that in arresting the appellant he was executing the arrest warrant.[5] Though examined at length by counsel for the appellant, and obviously evasive, he never would testify that he saw the accused commit any crime.[6]

---

5. "Q. And then you executed the warrant of arrest, did you, that you had obtained on the 26th day of January? A. As he attempted to approach his Cadillac, yes, sir."

At another place he testified:

"Q. Did you have in your possession at that time to exhibit to the defendant a warrant of arrest? A. I did.

"Q. Did you execute that warrant of arrest? A. I did."

6. "Q. Well, from the time of the investigation up until the time you arrested him, you, yourself, never did see him do anything wrong, did you? A. I wouldn't say that, no, sir. I couldn't answer no to that question.

"Q. I mean violate any of the U. S. laws. A. Well, that is a difficult question to answer. I wish you would rephrase it, or reword it, if you possibly can, so I can better understand it.

"Q. Well, it is not my attempt to trap you in any question. I say from the time the investigation began until the 27th or 26th day of January, you never saw Veto Giordenello violate any of the laws of the United States of America, did you? A. Not that I am prepared to prove now, no, sir.

\* \* \* \* \*

"Q. You hadn't seen him violate any law at the time you swore out the first

The claim that the arrest can be justified as one for a different offense made without a warrant was actually put forward not by the arresting officer, but by Government counsel, and is a distinct afterthought. The appellant was charged with the different and later offense for the first time in the indictment. No complaint was filed with the commissioner for any such offense as would have been required by Rule 5(a), F.R.Crim.Proc., had he been arrested therefor,[7] and appellant was committed simply for the offense for which the warrant was issued. On that earlier offense the arresting officer had had ample time to get a warrant, as is evidenced by his having in fact secured a void warrant based upon his own sheer conclusions. As said by Judge Brown for this Court in the recent case of Clay v. United States, 5 Cir., 239 F.2d 196, 204:

> "Finally, while the ease and practicability of obtaining the warrant of arrest or to search, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, is no longer an

invariable rule of thumb, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, availability of the safeguards afforded by an impartial, judicial magistrate is a factor bearing on reasonable, probable cause."

See, also, Shurman v. United States, 5 Cir., 219 F.2d 282; Rent v. United States, 5 Cir., 209 F.2d 893.

Actually, it seems clear to me that the officer did not know, nor have probable cause to believe, that the appellant was committing a felony until he had arrested him, seized the paper sack from his hand, and searched that sack.[8] If the arrest had then been made for the different and later offense, it would come squarely within what was said by this Court in Walker v. United States, 5 Cir., 225 F.2d 447, 450: "The arrest of appellant followed and did not precede the search and was based upon the result of the illegal search." The crime involved in Walker v. United States, supra, and that involved in Johnson v. United States, supra, upon which the Walker Case re-

---

warrant on January 26th, had you? A. That is the same answer. I can't say no to that question.

"Q. But I am speaking of your own knowledge, Mr. Finley. A. Well, of my own knowledge I would say that the answer to your question is no, or rather it is undetermined. It is not no, and it is not yes, that I am prepared to prove or state now.

\* \* \* \* \*

"Q. Well, at the time you did arrest him on the 27th, you hadn't seen him violate the law before you served the warrant, had you? A. That is the same question again, Mr. Scott. I can't say whether I did or didn't at this time.

"Q. I will ask you the question this way; you went out in the vicinity of Lathrop and Brownsville Streets, didn't you? A. On the 27th day of January, 1956, yes, sir.

\* \* \* \* \*

"Q. Were you in an automobile there? A. Yes, sir.

"Q. Did you park your car? A. I did, sir.

"Q. Where? A. Just off of the intersection of Brownsville and Lathrop. I believe it is the northeast corner of that intersection.

"Q. Did you see the defendant Veto Giordenello there? A. I did, yes, sir.

"Q. What was he doing? A. Well, he was doing several things during the time that I saw him.

"Q. What did you see him do prior to the time you—A. I saw him drive his 1955 Cadillac; I saw him get out of that Cadillac; I saw him go into an address at 6827 Brownsville Street; I saw him come out of that address; I saw him go into a garage; I saw him come out of the garage—

"Q. And then you executed the warrant of arrest, did you, that you had obtained on the 26th day of January? A. As he attempted to approach his Cadillac, yes, sir."

7. Rule 5(a), F.R.Crim.Proc., provides in part:

"When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

8. The ninety-five papers or bindles containing a mixture of one ounce of heroin and five ounces of milk sugar were in a brown manila envelope inside the paper sack.

lied, come much nearer being committed in the presence of the officers than did the crime charged in this case.

My brothers hold, however, that the legality of appellant's arrest and search was effectively and finally conceded because not objected to at the preliminary hearing and again they rely upon United States v. Walker, 2 Cir., 197 F.2d 287. That case differs from this in many material respects.

In the first place it was not a direct appeal, as here, but was a collateral attack by motion under 28 U.S.C.A. § 2255, and the Second Circuit commented that, "Such a motion cannot ordinarily be used in lieu of appeal to correct errors committed in the course of a trial, even though such errors relate to constitutional rights." 197 F.2d at page 288.

Further in that case, the search was not incidental to an arrest, as here, but the defendant in that case, while under arrest for a different offense, had confessed the crime for which he was later indicted and convicted and had consented to a search of his trunks which produced the evidence used at the trial. The Second Circuit further commented:

> "The evidence obtained by search was found in the appellant's luggage which was in the possession of Mrs. Ashe, who consented to the search. As we stated on the prior appeal, United States v. Walker, 2 Cir., 190 F.2d 481, 483, the appellant had no right to object to the search of premises not occupied by him nor to the seizure of property not within his possession." 197 F.2d at page 289.

The most important distinction between that case and this is that there the Second Circuit did *not* hold that Walker's waiver of examination precluded him from thereafter objecting on the ground that the complaint upon which the warrant was issued did not set forth the essential facts constituting the offense charged, but held to be waived that part of what the Second Circuit called point

(2) objecting that the complainant did not have personal knowledge of the facts and had not sustained his complaint by legally competent evidence.[9] I quote the exact language of the Second Circuit:

> " * * * When arraigned before the commissioner in Maryland the appellant could have challenged the complaint on the ground that the complainant did not have personal knowledge, but his waiver of examination and consent to removal would, in our opinion, preclude a later assertion that the complaint was not sustained by legally competent evidence.[6]

> "6. See United States v. Ruroede, D.C.S.D.N.Y., 220 F. 210, 213, where Judge Augustus N. Hand said: 'His waiver will prevent him, as I have heretofore said, from objecting to informalities or irregularities in the warrant or in the complaint. * * * The prisoner has a right to have evidence produced in support of the complaint and to produce evidence on his part in answer thereto; in other words, to have the benefit of a preliminary examination. If he does not desire to have it and waives it, he cannot thereafter claim that he should have had it. In other words, the waiver is as broad as the privilege and nothing more.' Compare United States ex rel. King v. Gokey, D.C.N.D.N.Y., 32 F.2d 793, 795."

True, the Second Circuit had already held that the complaint in that case did set forth the essential facts constituting the offense charged, and, with deference, I have hereinbefore questioned the soundness of that holding. Whether sound or not, however, it was in effect a holding by the Second Circuit in that case that the complaint was sufficient to confer jurisdiction on the commissioner to issue the warrant. The distinction is made entirely clear, indeed obvious, if, instead of the extracts quoted from Judge Augustus

---

9. An objection regarded as a mere informality or irregularity as is evidenced by the quotation in the succeeding footnote 6 to that opinion, quoted infra.

6. See note 6 on page 582.

N. Hand in footnote 6 to the Second Circuit's opinion, quoted supra, we read the entire paragraph of Judge Hand's opinion.

"It is urged, however, by the United States attorney, that, inasmuch as the prisoner at the hearing before the commissioner waived examination, he is debarred now from complaining of his confinement pending an investigation by the grand jury. There is no doubt that a waiver of examination does debar a prisoner from thereafter questioning informalities or technical objections to the regularity of the proceeding; but I do not think that any cases cited by the United States attorney have gone so far as to hold that a waiver of examination cured a complaint which upon its face discloses no facts indicating the commission of a crime. While the government in any case is justified as far as possible in keeping secret its evidence until a matter has been submitted to the grand jury, it cannot, I think, sustain a warrant of arrest for any reason or under any circumstances, where neither the warrant nor the complaint state facts constituting the crime that is charged, even though the prisoner has at the hearing waived examination. His waiver will prevent him, as I have heretofore said, from objecting to informalities or irregularities in the warrant or in the complaint; but it does not, I think, debar him from attacking a process which does not upon its face state the facts which constitute the crime charged. The meaning of the waiver is, I think, simply this: The prisoner has a right to have evidence produced in support of the complaint and to produce evidence on his part in answer thereto; in other words, to have the benefit of a preliminary examination. If he does not desire to have it and waives it, he cannot thereafter claim that he should have had it. In other words, the waiver is as broad as the privilege and nothing more. He has never by any conduct of his waived the right to object to the fact of being held upon a complaint which states no cause of action and upon a process which is, therefore, void." United States v. Ruroede, D.C.S.D.N.Y., 220 F. 210, 213–214.

Again the distinction appears from the other case referred to in footnote 6 to the Second Circuit's opinion, supra, United States ex rel. King v. Gokey, D.C.N.D.N.Y., 32 F.2d 793, 795, where Judge Bryant said:

"The fact that the records show that relator upon arraignment waived examination, and consented to await the action of the District Court, does not estop him from now questioning the legality or sufficiency of the complaint. A waiver of examination, if one is had, debars a prisoner from thereafter questioning informalities or technical objections to the regularity of the proceeding, but it does not, I think, deprive him of the right to attack a process insufficient to confer jurisdiction. United States v. Ruroede (cited above); People ex rel. Perkins v. Moss, 187 N.Y. 410, 80 N.E. 383, 11 L.R.A.,N.S., 528, 10 Ann.Cas. 309."

A somewhat similar question was presented to the Supreme Court in Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505, where the information filed by the United States Attorney, upon which a bench warrant issued, had not been verified by the United States Attorney but was supported only by the affidavits of witnesses sworn to before a notary public—a state official not authorized to administer oaths in federal criminal proceedings. Mr. Justice Brandeis, speaking for the Court, said:

" * * * A bench warrant issued, and the marshal executed it by arresting the defendants. When they were brought into court, each gave bond to appear and answer, was released from custody immediately,

586

and was not thereafter in custody by virtue of the warrant or otherwise. At the time of giving the bonds, no objection was made to either the jurisdiction or the service by execution of the warrant, and nothing was done then indicating an intention to enter a special appearance. * * *

"The bail bonds bound the defendants to 'be and appear' in court 'from day to day' and 'to answer and stand trial upon the information herein and to stand by and abide the orders and judgment of the court in the premises.' It is urged there was a waiver by giving the bail bonds without making any objection. We are of the opinion that the failure to take the objection at that time did not waive the invalidity of the warrant or operate as a general appearance." 273 U.S. at pages 4 and 9, 47 S.Ct. at pages 251 and 253.

Further on in that opinion, Mr. Justice Brandeis makes it clear that, if we assume the existence of competent evidence to prove probable cause, it would be utterly futile to demand a preliminary hearing in order to object to an illegal arrest. Commitment, or, if necessary, rearrest and ultimate commitment, would result from the preliminary hearing just the same.

No lawyer would dream (or so I think) that by failing to demand an apparently unnecessary preliminary hearing he had waived the right of his client when charged with a different offense to object to the legality of his original arrest and the search that followed. Instead of thus stretching conduct not so intended into a waiver, we should, I think, "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, quoted and approved in Emspak v. United States, 349 U.S. 190, 198, 75 S. Ct. 687, 692, 99 L.Ed. 997, and relied on

by this Circuit in Ballantyne v. United States, 5 Cir., 237 F.2d 657, 665, 669.[10]

Being of the firm view that the warrant was invalid, the arrest illegal, and the search unauthorized, I respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.

10. Further, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Gouled v. United States, 255 U.S. 298, 313, 41 S.Ct. 261, 65 L.Ed. 647; quoted and approved in Agnello v. United States, 269 U.S. 20, 34, 35, 46 S.Ct. 4, 7, 70 L. Ed. 145.