[Crim. No. 6570. In Bank. Mar. 4, 1960.]

In re GEORGE COOPER, on Habeas Corpus.

[Crim. No. 6571. In Bank. Mar. 4, 1960.]

In re ABE S. TOBEROFF, on Habeas Corpus.

[Crim. No. 6572. In Bank. Mar. 4, 1960.]

In re EDWIN D. RICH, on Habeas Corpus.

[Crim. No. 6573. In Bank. Mar. 4, 1960.]

In re ALBERT G. JEFFERIES, on Habeas Corpus.

[Crim. No. 6574. In Bank. Mar. 4, 1960.]

In re FLOYD L. CLEMENS, on Habeas Corpus.

[Crim. No. 6575. In Bank. Mar. 4, 1960.]

In re RALPH LEVERSON, on Habeas Corpus.

774

Milton Wichner, Brock, Fleishman & Rykoff, Stanley Fleishman, Prentiss Moore, George E. Lindelof, Jr., William A. Munnell, Leonard S. Sands, Herbert S. Nusbaum and Edwin M. Rosendahl for Petitioners.

William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan and Harry Wood, Deputy District Attorneys, for Respondent.

TRAYNOR, J.—By petitions for writs of habeas corpus petitioners challenge the validity of proceedings to extradite them to Pennsylvania to stand trial for the distribution of obscene literature and related offenses. We issued orders to show cause directed to the sheriff of Los Angeles County and ordered petitioners released on bail. In his return the sheriff alleges that he took custody of petitioners pursuant to extradition warrants issued by the Governor of California. Copies of the warrants were filed with the return, and the original supporting papers from the Governor of Pennsylvania to the Governor of California were lodged with the court and a motion made that they be filed. These documents disclose that petitioners were indicted for crimes committed in Philadelphia County, Pennsylvania. Three petitioners were indicted for distributing and advertising obscene literature, and three for distributing and conspiring to distribute such literature. The crimes were allegedly committed in one case in 1956, in two cases in 1957, and in three cases in 1958.

Pennsylvania seeks extradition, not under federal law on the ground that petitioners committed crimes in Pennsylvania and then fled from that state (see U.S. Const., art. IV, § 2, clause 2; 18 U.S.C.A. § 3182; Pen. Code, §§ 1548.1-1548.2), but under section 6 of the Uniform Criminal Extradition Act (Pen. Code, § 1549.1) on the ground that in mailing obscene literature in California to Pennsylvania each petitioner committed ''an act in this State . . . intentionally resulting in a crime in'' Pennsylvania. (Pen. Code, § 1549.1.)

Petitioners contend that since such extradition is not authorized by the United States Constitution or by federal statute, section 1549.1 is invalid. It is settled, however, that the federal constitutional and statutory provisions are not exclusive and that the states are free to cooperate with one another by extending interstate rendition beyond that required by federal law. (*People of the State of New York* v. *O'Neill*, 359 U.S. 1 [79 S.Ct. 564, 568, 570, 3 L.Ed.2d 585]; *In re Tenner*, 20 Cal.2d 670, 677 [128 P.2d 338]; *In re Davis*, 68 Cal.App.2d 798, 802-807 [158 P.2d 36]; *In re Morgan*, 86 Cal.App.2d 217, 223 [194 P.2d 800]; *Ex parte Morgan*, 78 F.Supp. 756, 761, aff'd, *Morgan* v. *Horrall*, 175 F.2d 404, 407; see 9 Uniform Laws Annotated (1957) 299.)

The United States Supreme Court approved such cooperation in sustaining a Florida statute (Fla. Stat. 1957, §§ 942.01-942.06, F.S.A.) based on the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. (9 Uniform Laws Annotated (1957) 91.) "The Constitution did not purport to exhaust imagination and resourcefulness in devising fruitful interstate relationships. It is not to be construed to limit the variety of arrangements which are possible through the voluntary and cooperative actions of individual States with a view to increasing harmony within the federalism created by the Constitution. Far from being divisive, this legislation is a catalyst of cohesion. It is within the unrestricted area left to the States by the Constitution." (*People of the State of New York* v. *O'Neill, supra,* 359 U. S. 1, 6.)

Modern communication and transportation facilitate the commission of crimes across state lines. A criminal who acts in one state to commit crimes in another may pose a far more serious problem to the latter state than one who commits a crime there and then flees from justice. When the criminal who commits his crime entirely in one state flees, he ordinarily poses no threat of additional crimes therein; if extradition fails, there is only frustration of that state's interest in punishing him. In contrast, the criminal who operates from without the state's borders poses a continuing threat. Since his conduct may be undetected or apparently harmless in the state where he acts, the only effective impetus for prosecution may come from the state that suffers the harm. Far more divisive than a state's refusal to extradite a fugitive for a past offense would be its unwitting provision not only of a base of operation but of an asylum for those who commit crimes without being personally present at the place where their crimes are consummated. The Legislature validly enacted section 1549.1 to prevent that result.

Section 1549.1 provides that "The Governor of this State may also surrender, on demand of the executive authority of any other State, any person in this State charged in such other State in the manner provided in section 1548.2 of this code with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose executive authority is making the demand. . . ." Section 1548.2 provides that the demand "shall be accompanied by a copy of an indictment found or by information or by a copy of an affidavit made before a magistrate in the demand-

ing State together with a copy of any warrant which was issued thereon. . . ." In the present cases, each demand is accompanied by an indictment charging the defendant named therein with committing crimes in Pennsylvania and an affidavit made before a magistrate by an investigator of the district attorney's office. The affidavits are titled "Criminal Complaint for Warrant of Arrest" and the facts stated are set forth as "true and correct according to the best of [the affiant's] knowledge, information and belief." They describe petitioners' distribution of obscene literature in Pennsylvania by mail from California and each contains a paragraph in substantially the following form: "Deponent further avers that, by reason of the said act and acts of depositing the said literature and written and printed matter in the United States Mail for delivery and distribution to the said private citizens in and about the said City and County of Philadelphia, and well knowing and intending that the said literature would be so delivered and distributed, the said FLOYD CLEMMENS did do such act and acts in the said State of California which intentionally resulted in the commission of the crime of Distributing Obscene Literature in the said City and County of Philadelphia as prohibited by the Act of the General Assembly of this Commonwealth, and which is against the peace and dignity of this Commonwealth."

Since section 1548.2 provides that the essential facts may be charged either by an indictment, an information, or by an affidavit made before a magistrate, it is immaterial that the indictments did not allege the commission of acts in this state intentionally resulting in crimes in Pennsylvania. Such allegations were expressly set forth in the affidavits.

It is contended, however, that the affidavits are insufficient on the ground that the magistrate did not act on them by issuing warrants. Since the purpose of affidavits to support extradition is not to secure immediate arrests but to convince the respective Governors that extradition is justified, it is immaterial that the magistrate did not act on the affidavits. (*People* ex rel. *Gates* v. *Mulcahy,* 392 Ill. 498 [65 N.E.2d 21, 22] ; see *People* ex rel. *Moore* v. *Skinner,* 284 App.Div. 770 [135 N.Y.S.2d 107, 109] ; *Ex parte Peairs,* 162 Tex.Crim.Rep. 243 [283 S.W.2d 755, 756-757].) Thus, section 1548.2 does not require that a warrant accompany a demand based upon an affidavit but only that "any warrant which was issued thereon" shall be included. (*Cf., In re*

*Murphy,* 321 Mass. 206 [72 N.E.2d 413, 417], applying Massachusetts statute requiring that warrant accompany the affidavit.)

It is further contended that affidavits made on information and belief are insufficient to support extradition unless the sources of information and reasons for belief are stated so that the Governors involved and the court in habeas corpus proceedings may determine whether extradition is warranted. (See *Rice* v. *Ames,* 180 U.S. 371, 374-376 [21 S.Ct. 406, 45 L.Ed. 577] ; *Stark* v. *Livermore,* 3 N.J. Super. 94 [65 A.2d 625, 627] ; *People* ex rel. *MacSherry* v. *Enright,* 112 Misc. 568 [184 N.Y.S. 248, 252] ; *State* ex rel. *Phillips* v. *Garren,* 186 S.C. 333 [195 S.E. 834, 835] ; *Ex parte Murray,* 112 S.C. 342 [99 S.E. 798, 800, 5 A.L.R. 1152] ; *cf. State* ex rel. *Hogan* v. *Moeller,* 191 Minn. 193 [253 N.W. 668, 669] ; *People* v. *Mulcahy, supra,* 392 Ill. 498 [65 N.E.2d 21, 22] ; *Ex parte Paulson,* 168 Ore. 457 [124 P.2d 297, 302-303] ; *People* ex rel. *De Martini* v. *McLaughlin,* 243 N.Y. 417 [153 N.E. 853, 854] ; *Ex parte Cooper,* 163 Tex.Crim.Rep. 642 [295 S.W.2d 906, 907] ; *Ex parte Logan,* 151 Tex. Crim. Rep. 129 [205 S.W.2d 994, 995] ; *United States* ex rel. *McCline* v. *Meyering,* 75 F.2d 716, 718; *Raftery* ex rel. *Huie Fong* v. *Bligh,* 55 F.2d 189, 194; *Ex parte Hart,* 63 F. 249, 259-260 [11 C.C.A. 165, 28 L.R.A. 801] ; *Ex parte Morgan,* 20 F. 298, 307.) The affidavits do not set forth the affiants' sources of information or reasons for belief that petitioners had committed the offenses charged, but the purpose of the requirement that they do so is fully met when as in these cases the indictments establish reasonable cause to believe petitioners guilty of the offenses charged and the affidavits demonstrate that the indictments are based on petitioners' California activities. Thus in each case the affidavit and indictment dovetail to meet the requirements of sections 1549.1 and 1548.2. The affiants and other witnesses appeared before the grand jury. Since it is undisputed that at all relevant times petitioners have been in California, the indictments are obviously based on petitioners' mail-order businesses conducted from this state and concern the very criminal transactions set forth in the affidavits. It must be presumed that sufficient evidence was presented to the grand jury to support the indictments, and as prosecuting witnesses the affiants knew of their own knowledge that the indictments were based on petitioners' California activities. Under such circumstances the respective Governors were bound to know that the indictments were based on petitioners' activities set

forth in the affidavits, including their acts in California intentionally resulting in crimes in Pennsylvania.

██ Sections 1549.1 and 1548.2 do not provide that the indictment alone or the affidavit alone must sufficiently allege all of the facts necessary to support extradition under section 1549.1. To add such a provision would exalt form over substance. ██ Protection from unjustified extradition does not lie in reading into the extradition laws purely technical requirements that a forewarned prosecutor could easily meet, but in the sound judgment of the respective Governors charged with the administration of those laws. Their judgment is entitled to great weight. ██ As the United States Supreme Court stated, in reviewing the sufficiency of an affidavit to support extradition pursuant to federal law, "When it appears, as it does here, that the affidavit in question was regarded by the executive authority of the respective States concerned as a sufficient basis, in law, for their acting—the one in making a requisition, the other in issuing a warrant for the arrest of the alleged fugitive— the judiciary should not interfere, on *habeas corpus,* and discharge the accused, upon technical grounds, and unless it be clear that what was done was in plain contravention of law." (*Compton* v. *Alabama,* 214 U.S. 1, 8 [29 S.Ct. 605, 53 L.Ed. 885] ; see also *State* ex rel. *Trigg* v. *Thompson,* 196 Tenn. 147 [270 S.W.2d 332, 333-334] ; *Stark* v. *Livermore, supra,* 3 N.J. Super. 94 [65 A.2d 625, 627].)

Petitioners contend that Pennsylvania's obscenity statute (18 Purdon's Pa. Stats., § 4524) is unconstitutional and that therefore they should not be extradited for violating it. ██ It has been held that the courts of the asylum state in habeas corpus proceedings need not (*Pearce* v. *Texas,* 155 U.S. 311, 314 [15 S.Ct. 116, 39 L.Ed. 164]) and should not review the constitutionality of the statute that is alleged to have been violated. (*In re Uran,* 138 Cal.App.2d 479, 480-481 [292 P.2d 225] ; *Ex parte Key,* 164 Tex. Crim. Rep. 524 [301 S.W.2d 90, 91] ; *Ullom* v. *Davis,* 169 Miss. 208 [150 So. 519, 521] ; *Ex parte Peairs, supra,* 162 Tex. Crim. Rep. 243 [283 S.W.2d 755, 757] ; see also *State* v. *Clough,* 71 N.H. 594 [53 A. 1086, 1092] ; *Johnson* v. *Matthews,* 182 F.2d 677, 682; *Ross* v. *Middlebrooks,* 188 F.2d 308, 310-311; *In re Backstron,* 98 Cal.App. 2d 500, 501-503 [220 P.2d 742].) Its constitutionality may depend on how it will be interpreted and applied by the courts of the demanding state in the defendant's case. Of course, if

it clearly appeared that a statute were void on its face or had been held to be void on its face by the highest court of the demanding state or by the United States Supreme Court, the indictment, information, or affidavit would then fail to "substantially charge the person demanded with having committed a crime under the law of [the demanding] State" (Pen Code, § 1548.2), and the defendant should then be discharged. (See *Pierce* v. *Creecy*, 210 U.S. 387, 404-405 [28 S.Ct. 714, 52 L.Ed. 1113] ; *In re Katcher*, 39 Cal.2d 30, 31 [243 P.2d 785] ; *Cassis* v. *Fair*, 126 W.Va. 557 [29 S.E.2d 245, 249, 151 A.L.R. 233].)

 Petitioners contend that the Pennsylvania Supreme Court has in effect determined that the obscenity law under which they have been indicted (18 Purdon's Pa. Stats., § 4524) is void on its face by its holding that a related statute (18 Purdon's Pa. Stats., § 4528) is void for vagueness. ·(*Commonwealth* v. *Blumenstein*, 396 Pa. 417 [153 A.2d 227].) We have examined section 4528[1] and also section 4524 as it read both before[2] and after[3] its amendment in 1957. Although there

---

[1] "Whoever gives or participates in, or being the owner of any premises, or having control thereof, permits within or on said premises, any dramatic, theatrical, operatic, or vaudeville exhibition, or the exhibition of fixed or moving pictures, of a lascivious, sacrilegious, obscene, indecent, or immoral nature and character, or such as might tend to corrupt morals, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment for a period not exceeding one (1) year, or both. 1939, June 24, P.L. 872, § 528."

[2] "Whoever sells, lends, distributes, exhibits, gives away, or shows or offers to sell, lend, distribute, exhibit, or give away or show, or has in his possession with intent to sell, lend, distribute or give away or to show, or knowingly advertises in any manner, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, storypaper, paper, writing, drawing, photograph, figure or image, or any written or printed matter of an indecent character, or any article or instrument of indecent or immoral use or purporting to be for indecent or immoral use or purpose, or whoever designs, copies, draws, photographs, prints, utters, publishes, or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, storypaper, paper, writing, figure, image, matter, article or thing, or whoever writes, prints, publishes ·or utters, or causes to be printed, published or uttered, any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to do so, where, how, of whom, or by what means any, or what purports to be, any obscene, lewd, lascivious, filthy, disgusting or indecent book, picture, writing, paper, figure, image, matter, article or thing named in this section can be purchased, obtained or had, or whoever prints, utters, publishes, sells, lends, gives away, or shows, or has in his possession with intent to sell, lend, give away, or show, or otherwise offers for sale, loan or gift, or distribution, any pamphlet, magazine, newspaper or other printed paper devoted to the publication and principally made up of criminal news, police reports or accounts of criminal deeds, or pictures of stories of deeds of bloodshed, lust or crime, or whoever hires, employs, uses or permits any minor or

are substantial similarities in language, there are also substantial differences, and we cannot say that because it invalidated section 4528, the Pennsylvania Supreme Court would necessarily hold section 4524 void. Similar statutes were sustained as applied and interpreted in *Roth* v. *United States* and *Alberts* v. *California,* 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498], and the Pennsylvania Supreme Court is free to interpret section 4524 to make it valid under those decisions. There is no merit in the contention that section 4524 is void on its face because it does not expressly require that the defendant have knowledge that the proscribed material is obscene. The statute may reasonably be interpreted as making knowledge an element of the offense (see *Pockman* v. *Leonard,* 39 Cal.2d 676, 685 [249 P.2d 267] ; *Hirschman* v. *County of Los Angeles,* 39 Cal.2d 698, 702 [249 P.2d 287, 250 P.2d 145]) ; so inter-

child to do or assist in doing any act or thing mentioned in this section, is guilty of a misdemeanor, and upon conviction, shall be sentenced to imprisonment not exceeding one (1) year, or to pay a fine not exceeding five hundred dollars ($500), or both. 1939, June 24, P.L. 872, § 524.''

[3]''Obscene literature consists of any writing, or printed matter, picture, image, drawing, figure, photograph or other pictorial representation, which is unrelated to science, art or scientific study, and taken as a whole is indecent, lewd, lascivious, and has the effect of inciting to lewdness or sexual crime. Whoever sells, lends, distributes, exhibits, gives away, or shows or offers to sell, lend, distribute, exhibit, or give away or show, or has in his possession with intent to sell, lend, distribute or give away or to show, or knowingly advertises in any manner, any obscene literature or lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, storypaper, paper, writing, drawing, photograph, figure or image, or any written or printed matter of an indecent character, or any article or instrument of indecent or immoral use or purporting to be for indecent or immoral use or purpose, or whoever designs, copies, draws, photographs, prints, utters, publishes, or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, storypaper, paper, writing, figure, image, matter, article or thing, or whoever writes, prints, publishes or utters, or causes to be printed, published or uttered, any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to do so, where, how, of whom, or by what means any, or what purports to be, any obscene, lewd, lascivious, filthy, disgusting or indecent book, picture, writing, paper, figure, image, matter, article or thing named in this section can be purchased, obtained or had, or whoever prints, utters, publishes, sells, lends, gives away, or shows, or has in his possession with intent to sell, lend, give away, or show, or otherwise offers for sale, loan or gift, or distribution, any pamphlet, magazine, newspaper or other printed paper devoted to the publication and principally made up of criminal news, police reports or accounts of criminal deeds, or pictures of stories of deeds of bloodshed, lust or crime, or whoever hires, employs, uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section, is guilty of a felony, and upon conviction, shall be sentenced to imprisonment not exceeding two (2) years, or to pay a fine not exceeding two thousand dollars ($2000), or both. As amended 1957, July 17, P.L. 973, § 1.''

preted it would not be invalid as imposing strict criminal liability. (*Winters* v. *New York,* 333 U.S. 507, 510, 514-515 [68 S.Ct. 665, 92 L.Ed. 840] ; *Fox* v. *Washington,* 236 U.S. 273, 277 [35 S.Ct. 383, 59 L.Ed. 573].) *Smith* v. *California,* 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205], is not to the contrary, for in that case the state court had interpreted the ordinance there involved as eliminating knowledge of the character of the proscribed literature as an element of the offense, and it was only as so interpreted that the Supreme Court held the ordinance void.

Petitioners contend, however, that the Pennsylvania Legislature has recognized the invalidity of section 4524 as it read at the times here relevant by amending it in 1959 to set forth the standard of obscenity approved in the Roth and Alberts cases. The effect of the 1959 amendment on prosecutions commenced prior to its date is a question for the Pennsylvania courts, and we find no basis for concluding that that amendment absolved petitioners of responsibility for violations alleged to have occurred before its date.

Petitioners' contention that the Pennsylvania statute may not be applied to their mail-order business on the ground that Congress preempted the field by enacting the federal statute punishing the mailing or advertising by mail of obscene material (18 U.S.C.A., § 1461) was answered adversely to them in the Alberts case. (354 U.S. 476, 493-494.)

The motion to file the lodged documents is granted. The orders to show cause are discharged, the petitions for writs of habeas corpus are denied, and petitioners are remanded to custody.

Gibson, C. J., Spence, J., and White, J., concurred.

SCHAUER, J.—Although I agree that the interpretation, application, and constitutionality of the Pennsylvania statute under which petitioners have been indicted are questions (at least initially) for the Pennsylvania courts, I cannot agree that the papers which accompany the Pennsylvania demands for extradition are sufficient to support such demands. In the case of each petitioner the only averment in such papers that he committed "an act in this State . . . intentionally resulting in a crime in the States whose executive authority is making the demand" (Pen. Code, § 1549.1) is in the "Criminal Complaint for Warrant for Arrest," sworn to before a magistrate by an investigator for the Philadelphia

district attorney. Each such complaint avers that "to the best of . . . [the affiant's] knowledge, information and belief . . . investigation and inquiry has disclosed" that the named petitioner by depositing obscene literature in the United States mail for distribution to private citizens in Philadelphia, "did do such act and acts in the said State of California which intentionally resulted in the commission of the crime of Distributing Obscene Literature in the said City and County of Philadelphia."

I would not suggest that the governor or the courts of this state, when extradition is sought, should go behind a formal charge by information or indictment in the demanding state and inquire into the sufficiency of the evidence. *In re Letcher* (1904), 145 Cal. 563, 564 [79 P. 65], holds that such inquiry is not proper. However, I do believe that where, as here, it is necessary to resort to an affidavit before a magistrate in order to determine whether the accused is extraditable as one who intentionally committed an act in California resulting in a crime in the demanding state, averments on information and belief which do not state the sources of affiant's information or the grounds of his belief, are insufficient. The following considerations concerning charges against those whose extradition as actual fugitives is sought under federal statute are at least as applicable to the situation here, where the demanding state seeks the surrender of persons who assertedly committed criminal acts in this state intentionally resulting in a crime in the demanding state:

"A citizen ought not to be deprived of his personal liberty upon an allegation which, upon being sifted, may amount to nothing more than a suspicion." (*Rice* v. *Ames* (1901), 180 U.S. 371, 374 [21 S.Ct. 406, 45 L.Ed. 577].) "Charges are not verified by an affidavit that somebody is informed and believes that they are true. This is mere evasion of the law; the most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man three hundred [or more than two thousand] miles off, who will swear that he has been informed and believed in his guilt." (*Swart* v. *Kimball* (1880), 43 Mich. 443, 451 [5 N.W. 635], quoted with approval in *Ex parte Spears* (1891), 88 Cal. 640, 642 [26 P. 608, 22 Am.St.Rep. 341].)

Obviously extradition can result in great inconvenience and substantial damage to the accused. While this state should not hesitate to honor the proper demand of a sister state, it

is my opinion that when California sanctions the upsetting of the life and affairs of its residents by surrendering them to the authorities of another state, this state can and should require not merely a perfunctory assertion of belief by someone in the demanding state but a showing that there has been an official determination in the demanding state resulting in a formal charge by indictment or information or, if the charge is by affidavit before a magistrate, a showing by such affidavit that the charge is based upon something more than the accuser's belief.

The return of an indictment presupposes the receipt of evidence before the grand jury and the filing of an information presupposes that evidence has been appraised by the prosecuting attorney, an officer of the court experienced in evaluating evidence (and, in states with procedure such as that of California, that witnesses have been examined before a magistrate and the magistrate has found that a public offense has been committed and there is sufficient cause to believe the defendant guilty of it). But a mere hearsay affidavit (even where, like the complaints here, it is made by an official investigator) stating that the affiant for undisclosed reasons believes that the accused committed acts in California which intentionally resulted in a crime in the demanding state, in my opinion, does not justify removal of the accused to the state where the affiant has expressed such belief.

The majority say (*ante*, p. 778) that "in each case the [hearsay] affidavit and [the] indictment dovetail to meet the requirements of sections 1549.1 and 1548.2." They reach this conclusion because, on their view, "It must be presumed that . . . as prosecuting witnesses the affiants knew of their own knowledge that the indictments were based on petitioners' California activities" and "Under such circumstances the respective Governors were bound to know that the indictments were based on petitioners' activities set forth in the affidavits, including their acts in California intentionally resulting in crimes in Pennsylvania." It does not appear to me that the California courts must presume or that the governors of Pennsylvania and California are bound to know that, because the affiants for unstated reasons believe that petitioners committed acts in California intentionally resulting in a crime in Pennsylvania, the indictments which contain no such averments are in fact charges based upon such asserted California acts and intentions. A sufficient charge of acts in California intentionally resulting in a crime in the demanding state

is a prerequisite to extradition under section 1549.1 of the Penal Code just as a "substantial" charge of crime is a prerequisite to extradition under either section 1549.1 or section 1548.2. If the indictment wholly omitted to charge essential elements of a crime, would the majority hold that these essential elements could be "substantially" supplied by the affidavit before a magistrate, made by someone who was also a witness before the grand jury, that he believed in their existence? I would not.

In rejecting the contention that the affidavits are insufficient because the magistrate did not issue warrants of arrest based upon them the majority say (*ante,* p. 777) that the failure to issue warrants is immaterial "[s]ince the purpose of affidavits to support extradition is not to secure immediate arrests but to convince the respective Governors that extradition is justified." While I agree that the issuance of a warrant of arrest by a magistrate of the demanding state is not a prerequisite to extradition, the quoted statement of the majority seems to contain the suggestion that where an indictment, information, or affidavit (verified complaint) before a magistrate in the demanding state is not a sufficient charge to support extradition, that procedure can nevertheless be effected if someone in the demanding state goes before a magistrate and makes supplementary "affidavits to support extradition." I cannot agree with any suggestion that purely evidentiary affidavits not charging a crime would be sufficient to supplement a charge which is defective on its face (*cf. In re Davis* (1945), 68 Cal.App.2d 798, 809 [3] [158 P.2d 36]).

For the reasons above stated, it is my opinion that the petitions should be granted and the petitioners should be discharged from custody.

McComb, J., and Peters, J., concurred.

Petitioners' applications for a rehearing were denied March 30, 1960. Schauer, J., McComb, J., and Peters, J., were of the opinion that the applications should be granted.