278

Silous HUDDLESTON, Plaintiff,

v.

Jesse COSTA, District Attorney of Washington County, Walter Marm, Chief County Detective for Washington County, Capt. Joseph C. Snyder, Troop "B" Pennsylvania State Police, Washington Barracks, and Alex Debrezini, Sheriff of Washington County, Defendants.

Civ. A. No. 70–700.

United States District Court,
W. D. Pennsylvania.

June 26, 1970.

George B. Stegenga, Washington, Pa., for plaintiff.

Jesse Costa, Dist. Atty., Washington County, Washington, Pa., Richard A. Sprague, Sp. Prosecutor for Washington County, First Asst. Dist. Atty., City of Philadelphia, Philadelphia, Pa., for defendants.

## OPINION

GOURLEY, District Judge:

This is a Complaint filed by a citizen of the State of Tennessee who is currently confined in the Cuyahoga County Jail at Cleveland, Ohio, by reason of indictments[1] returned against him by the Grand Jury for the United States District Court for the Northern District of Ohio. Plaintiff also has been separately indicted by the Grand Jury for Washington County, Pennsylvania, upon three charges of murder and a charge of conspiracy to commit an unlawful act. He seeks to enjoin his impending extradition from the State of Ohio to the State of Pennsylvania on the ground that extradition proceedings will be instituted under a State statute violative of the Constitution and laws of the United States. It is requested that a three-judge district court be convened pursuant to 28 U.S.C. § 2281 to determine the constitutional question raised. Defendants have filed a Motion to Dismiss. A hearing was conducted on June 17, 1970, and after considering the pleadings, briefs, oral arguments of counsel and the law applicable herein, the Court is of the opinion that the request for the convening of a three-judge district court should be denied and the Complaint dismissed.

Plaintiff avers that he was not in the State of Pennsylvania at the time of the acts with which he is charged in the indictments by the Washington County Grand Jury, and this averment will be taken as true for purposes of defendant's Motion to Dismiss. It is contended that Article IV, Section 2, Clause 2, of the United States Constitution[2] permits an asylum State to render to a demanding State only such persons who were physically present in the demanding State at the time of the offenses charged. It is further contended that the Act of July 8, 1941, P.L. 288, Sec. 6, 19 P.S. § 191.6[3] a Pennsylvania enactment substantially similar to Section 6 of the Uniform Criminal Extradition Act, violates the aforesaid constitutional provision in that it authorizes the Governor of Pennsylvania to render to a demanding State an individual who was not in the demanding State at the time of the acts charged but rather committed said acts in some other State resulting in a crime in the demanding State.

The Court is confronted at the outset with serious questions concerning the jurisdiction of the Court, the form of action brought herein, the choice of defendants and the particular Statute chal-

---

1. The federal indictments charge plaintiff with interfering with a witness in a court of the United States in violation of 18 U.S.C. § 1503 and preventing a member of a labor organization from exercising rights to which he was entitled under 29 U.S.C. §§ 411(a) (2), (4) and 481 (c), in violation of 29 U.S.C. § 530.

2. Article IV, Section 2, Clause 2.
"A person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

3. 19 P.S. § 191.6 Extradition of persons not present in demanding state at time of commission of crime
"The Governor of this State may also surrender on demand of the executive authority of any other state any person in this State charged in such other state in the manner provided in section 3 with committing act in this State or in a third state intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom. 1941, July 8, P.L. 288, § 6."

lenged. It has been said that the regularity of extradition proceedings may be attacked only in the asylum State. 31 Am.Jur.2d, Extradition, § 74, p. 980. The accepted method of such an attack, under the Uniform Criminal Extradition Act, the laws of Ohio and Pennsylvania, and federal law, is by application for writ of habeas corpus. The proper defendant upon such an application is the person maintaining custody over the applicant, and, where the constitutionality of a State statute is properly challenged upon application for writ of habeas corpus, a three-judge court need not be convened. McCarroll v. Faust, 278 F.Supp. 448 (E.D.La.1968).

■ The Court is of the opinion that plaintiff may not circumvent the jurisdiction requirements of an action for writ of habeas corpus by framing the action as one for injunctive relief and naming as defendants citizens of the demanding State. Plaintiff is not in custody here nor under judgment of sentence of a court of this State. The traditional jurisdictional bases for filing a writ of habeas corpus do not exist here. Also, the named defendants are improper.

■ Moreover, plaintiff attacks a Statute inapplicable to his extradition. The challenged Pennsylvania Statute confers authority upon the Governor of this State to deliver to another State a person charged with a crime in the latter. Plaintiff's contemplated extradition, however, would be *to* this State, not *from* it. The extradition would be effectuated by the Governor of Ohio pursuant to Section 109–6 of the Ohio General Code, the Ohio statutory counterpart to the Pennsylvania law challenged herein.

■ Even disregarding the aforementioned deficiencies in the Complaint, which the Court deems sufficient to justify dismissal of the action for want of jurisdiction and proper parties, it must be concluded that no substantial constitutional question is presented which would warrant the convening of a three-judge district court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). A lack of substantiality may appear either because the constitutional issue is obviously without merit or because its unsoundness so clearly results from previous decisions of the United States Supreme Court as to foreclose the subject. Herald Co. v. Harper, 410 F.2d 125 (8th Cir. 1969).

■ It may be acknowledged that Article IV, Section 2, Clause 2, of the Constitution and the implementing federal statute, 18 U.S.C. § 3182, authorize extradition by an asylum State only of persons present in the demanding State at the time of the crime charged. Strassheim v. Daily, 221 U.S. 280, 31 S. Ct. 558, 55 L.Ed. 735 (1911); Hyatt v. New York ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903). However, plaintiff's contention that the aforesaid constitutional provision acts as a limitation upon the extent to which the States may enact laws of broader scope pertaining to extradition runs contrary to all prior legal authority upon the question.

Most compelling is the prior pronouncement of the Supreme Court of the United States in the case of New York v. O'Neill, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed. 2d 585 (1958). In New York v. O'Neill, plaintiffs challenged the constitutionality of the Florida enactment of the "Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings", F.S.A. §§ 942.01–942.06, a statute also enacted in forty-one other States and the Commonwealth of Puerto Rico. Speaking through Mr. Justice Frankfurter, the Supreme Court rejected the contention that Article IV, Section 2, Clause 2, of the Constitution was restrictive of the power of the States to fashion reciprocal arrangements for the administration of justice and stated at pps. 5–6, 79 S.Ct. at p. 568:

"In Commonwealth of Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717, Mr. Chief Justice Taney, speaking of the obligation imposed by the Constitution upon the Governor of Ohio to

deliver to Kentucky one accused of violation of the criminal laws of Kentucky, called attention 'to the obvious policy and necessity of this provision to preserve harmony between States, and order and law within their respective borders * * *.' 24 How. at page 103. The same 'policy and necessity' underline the measure adopted by Florida and forty-two other jurisdictions. Unless there is some provision in the United States Constitution which clearly prevents States from accomplishing this end by the means chosen, this Court must sustain the Uniform Act. The absence of a provision in the United States Constitution specifically granting power to the States to legislate respecting interstate rendition of witnesses presents no bar. *To argue from the declaratory incorporation in the Constitution, Art. IV, § 2, of the ancient political policy among the Colonies of delivering up fugitives from justice an implied denial of the right to fashion other cooperative arrangements for the effective administration of justice, is to reduce the Constitution to a rigid, detailed and niggardly code.* In adjudging the validity of a statute effecting a new form of relationship between States, the search is not for a specific constitutional authorization for it. Rather, according the statute the full benefit of the presumption of constitutionality which is the postulate of constitutional adjudication, we must find clear incompatibility with the United States Constitution. The range of state power is not defined and delimited by an enumeration of legislative subject matter. *The Constitution did not purport to exhaust imagination and resourcefulness in devising fruitful interstate relationships. It is not to be construed to limit the variety of arrangements which are possible through the voluntary and cooperative actions of individual States with a view to increasing harmony within the federalism created by the Constitution.* Far from being devisive, this legisla-

tion is a catalyst of cohesion. It is within the unrestricted area of action left to the States by the Constitution." (Emphasis supplied.)

█ The Court is of the opinion that the foregoing statement by the Supreme Court of the United States effectively forecloses a challenge to Section 6 of the Uniform Criminal Extradition Act, as enacted by the States, on the ground that it conflicts with Article IV, Section 2, Clause 2, of the Constitution. As construed and interpreted in New York v. O'Neill, *supra,* the aforesaid constitutional provision, while declaratory of a mandatory duty of the States of the Union to deliver over to demanding States fugitives from justice, is neither the sole source of authority for interstate relationships nor a circumscription of the inherent power of the States to fashion interstate relationships in circumstances not covered by the constitutional provision.

That Section 6 of the Uniform Criminal Extradition Act is not in conflict with, or violative of, Article IV, Section 2, Clause 2 has been the unanimous conclusion of both State and federal courts entertaining challenges to its constitutionality. Section 6 has been enacted in forty-four States. It has been challenged as unconstitutional in eleven States, and in each instance, it has been held constitutional and compatible with Article IV, Section 2, Clause 2. See, for example, In re Cooper, 53 Cal.2d 772, 3 Cal.Rptr. 140, 349 P.2d 956, cert. denied, 364 U.S. 294, 81 S.Ct. 104, 5 L.Ed.2d 83 (1960), People ex rel. Brenner v. Sain, 29 Ill.2d 239, 193 N.E.2d 767 (1963), and English v. Matowitz, 148 Ohio St. 39, 72 N.E.2d 898 (1947).

Also, the recent decision of the Fifth Circuit Court of Appeals in Miller v. Decker, 411 F.2d 302 (1969) affirms the constitutionality of Section 6 of the Uniform Criminal Extradition Act, upon a comprehensive review of the prior authority. As stated therein at 305:

"Neither Article IV, Section 2, Clause 2, nor the federal statute expressly

negate the power of the states to provide for the extradition of persons who are not fugitives in the technical sense. The history of and the reason for the clause afford no basis for an interpretation that the states impliedly relinquished their sovereignty in all extradition matters outside the sphere of the clause, and no reason has been advanced to us which would support or compel such an interpretation."

The previous expression of the Supreme Court of the United States in New York v. O'Neill, *supra,* and the unanimity of authority in support of the constitutionality of the statutory provision questioned convinces the Court that no substantial constitutional issue is presented. Where a substantial constitutional question is wanting, a single district judge may refuse to convene a three-judge court and dismiss the action. Green v. Board of Elections of City of New York, 380 F.2d 445 (2d Cir. 1967).

An appropriate Order is entered.

### ORDER

And now, this 26 day of June, 1970, it is hereby Ordered that plaintiff's request for the convening of a three-judge court be and the same is hereby denied, and it is Further Ordered that defendants' Motion to Dismiss the Complaint be and the same is hereby granted.