**Ex parte Monard M. HARRISON.**

**No. 58140.**

Court of Criminal Appeals of Texas,
Panel No. 2.

June 14, 1978.

Rehearing En Banc Denied July 12, 1978.

William S. Rose, Austin, for appellant.

Before ONION, P. J., and DALLY and VOLLERS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order entered in a habeas corpus proceeding remanding appellant to the custody of the Wood County sheriff for extradition to Louisiana to answer a felony theft charge.

On September 26, 1977, the Governor of Louisiana issued his requisition to the Governor of Texas that appellant be delivered to designated Louisiana authorities for prosecution.

On March 7, 1978, the Honorable Dolph Briscoe issued his "Executive Warrant." Appellant was arrested on March 10, 1978 by virtue of such warrant. On the same date, appellant filed his application for writ of habeas corpus. On March 20, 1978, a hearing was conducted in the 115th Judicial District Court of Wood County. At such hearing the State offered the Executive Warrant and all the supporting papers, which included, inter alia, the requisition, the application for requisition, the information, affidavit and arrest warrant. The statutes of Louisiana pertaining to theft,

law of principals, initiation of prosecution, etc., were admitted without objection. Then a stipulation was entered into that Monard M. Harrison and M. M. Harrison are one and the same person and the individual named in the extradition papers; that Monard M. Harrison was not in the State of Louisiana from March 23, 1977 through April 3, 1977. At the conclusion of the hearing, the court remanded the appellant to custody for extradition. Notice of appeal was then given.

His first three grounds of error all relate to the sufficiency of the documents upon which the Texas Governor relied to issue his Executive Warrant. He contends that there was a lack of compliance with Article 51.13, § 6, V.A.C.C.P., and the Executive Warrant should not have issued, and having been issued, such action violated his due process and equal protection rights under the Texas and United States Constitutions.

§ 6 of the Uniform Extradition Act provides:

"Sec. 6. The Governor of this State may also surrender, on demand of the Executive Authority of any other State, any person in this State charged in such other State in the manner provided in Section 3 with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose Executive Authority is making the demand, and the provisions of this Article not otherwise inconsistent, shall apply to such cases, even though the accused was not in that State at the time of the commission of the crime, and has not fled therefrom." [1]

§ 3 of Article 51.13, supra, provides, inter alia, that the demand for extradition shall be:

". . . accompanied by a copy of an indictment found or by information supported by affidavit in the State having jurisdiction of the crime, or by a copy of an affidavit before a magistrate there, together with a copy of any warrant which issued thereupon . . .."

It is appellant's contention that since the charging instrument in this case, the bill of information,[2] charges appellant with committing the crime of theft in Caddo Parish, Louisiana, and makes no mention or allegation of acts committed in Texas or a third state intentionally resulting in a crime in Louisiana, then the bill of information does not comply with § 6 of Article 51.13, supra, and that such omission is fatal to the extradition request.

While this issue has never been addressed by this court, we note that this court has allowed extradition under § 6 of Article 51.13, supra, where the charging instruments themselves did not allege that the acts were committed in Texas or a third state intentionally resulting in a crime in the demanding state.[3] See, e. g., *Ex parte Foss*, 492 S.W.2d 552 (Tex.Cr.App.1973); *Ex parte Richeson*, 443 S.W.2d 265 (Tex.Cr. App.1969); *Ex parte Malone*, 378 S.W.2d 330 (Tex.Cr.App.1964).

In support of his contention, appellant cites *Ennist v. Baden*, 158 Fla. 41, 28 So.2d 160 (1946), where under similar facts the Supreme Court of Florida held that a New York indictment was insufficient to support the accused's extradition because it failed to charge him with committing in Florida, or in a third state, an act intentionally resulting in a crime in the demanding state. The New York Supreme Court has held to the same effect in *People ex rel. Butler v. Flood*, 29 A.D.2d 692, 287 N.Y.S.2d 150

1. See 31 Am.Jur.2d, Extradition, § 19, pp. 936–937.

2. The bill of information filed in the First District Court of Caddo Parish in Louisiana in pertinent part charges:

". . . that between the dates of March 23, 1977 and April 3, 1977, both dates inclusive, at and in the Parish, District and State aforesaid, M. M. Harrison committed the of-

fense of Theft, as set forth in R.S. 14:67, in that he did commit the theft of 33,040 gallons of gasoline, having a value of $12,641.28, the property of Atlas Processing Company, Shreveport, Caddo Parish, Louisiana . . .."

3. This does not mean that other supporting papers in these cases did not reflect the applicability of Article 51.13, § 6, supra.

(N.Y.Sup.Ct.1968), and *People ex rel. Coryell v. Flood*, 36 A.D.2d 977, 322 N.Y.S.2d 162 (N.Y.Sup.Ct.1971).

■ However, we believe the better practice is to judge the substance of the charge upon which the extradition is based by considering the "charging instrument" in conjunction with the supporting requisition documents. This court followed that rule, without articulating it, in *Ex parte Malone*, supra. In that case the indictment charged a violation of the Arkansas Hot Check Law and there were no allegations in the indictment that any acts were committed in Texas or in a third state intentionally resulting in a crime in Arkansas; however, this court stated:

"The affidavits of the prosecuting attorney and the prosecuting witness show that although appellant's acts were committed in this state, they intentionally resulted in a crime in Arkansas, which, under Sec. 6 of Art. 1008a (the predecessor to Article 51.13 in the 1925 Code), Vernon's Ann.C.C.P., authorized appellant's surrender on demand of the governor of Arkansas, even though he was not in that state at the time of the commission of the crime and had not fled therefrom."

For cases from other jurisdictions which have looked beyond the "charging instrument" to other requisition documents to determine the adequacy of the "charge" in extradition cases, see *Greenbaum v. Darr*, 220 Kan. 525, 552 P.2d 993 (1976); *State of Kansas v. Holeb*, 188 Neb. 319, 196 N.W.2d 387 (1972); *In re Cooper*, 53 Cal.2d 772, 3 Cal.Rptr. 140, 349 P.2d 956 (1960), appeal dismissed and cert. den. 364 U.S. 294, 81 S.Ct. 104, 5 L.Ed.2d 83 (1960); *In re Harris*, 170 Ohio St. 151, 163 N.E.2d 762 (1959); and *Ex parte Arrington*, 270 S.W.2d 39 (Mo.Sup. Ct.1954).

In the demand or requisition of the Louisiana Governor for the extradition of the appellant, it is clearly stated therein that the appellant stands charged with felony theft, a crime under the laws of Louisiana, ". . . by intentionally committing an act in the State of Texas resulting in said crime in this State, and it has been represented and is satisfactorily shown to me that the accused is now to be found in the State of Texas."

The sworn application of the District Attorney, First Judicial District, Caddo Parish, Louisiana, for the requisition states in part, "I aver and allege that the said M. M. Harrison is a principal to the crime of Felony Theft in that he did aid, abet, counsel and procure his employee, James Jerry Castle, to commit this crime in the manner set forth in the affidavit."

■ The affidavit supporting the bill of information was executed before James E. Clark, Judge of the First Judicial District, Caddo Parish, Louisiana.[4] While the affidavit does not contain the actual or the magic words of the statute that appellant was charged with committing an act in Texas, or in a third state, intentionally resulting in a crime in Louisiana, the only reasonable interpretation of that document is that is what is alleged against the appellant.

The affidavit states that appellant in Winnsboro, Texas does business under the names of M. M. Harrison, Harrison, Inc., and IMPAC Oil Company and that appellant operates gasoline self-service stations in East Texas under the name of IMPAC which sell gasoline several cents lower than other stations. Appellant purchases some

4. Appellant urges that the record does not show that James E. Clark was a magistrate, and that the handwritten notation "District Judge" after his signature was added to the affidavit after the supporting papers reached Texas. Nothing in the record supports this assertion in appellant's brief. We observe that the affidavit commences, "Before me, the undersigned Judge of the First Judicial District Court, Caddo Parish, Louisiana . . . ."

Further, there is a certification of the Louisiana Governor, "That James E. Clark is Judge of the First Judicial District Court in and for the Parish of Caddo, State of Louisiana." In absence of proof to the contrary, it is presumed Louisiana law is the same as Texas. In Texas a district judge is a magistrate. Article 2.09, V.A.C.C.P. Appellant's contention is without merit.

of the gasoline for these stations from Atlas Processing Company located in Shreveport, Caddo Parish, Louisiana, and from March 23 through April 3, 1977, his truck was observed by affiant on four occasions being loaded with gasoline at Atlas. Each load was estimated to be about 8,260 gallons with a value of about $3,100.00. Affiant and others followed the truck on the April 3rd trip and saw the gasoline unloaded at an IMPAC station. Appellant was at the station and talked with the truck driver while the gasoline was being unloaded.

Atlas had no record of selling gasoline to appellant on these four occasions; however, the loader from Atlas admitted that on those four occasions, and about twice a week for the past three years, he had disconnected the metering device and allowed the Harrison truck to be filled without making any record of it. He received various amounts of money for doing this from another Atlas employee, the former loader, who had conducted similar operations with appellant and his driver when he was running the loading operation.

Appellant's driver stated that he had been so employed for about five years and that on numerous occasions he transported gasoline illegally obtained from Atlas to various stations in Texas owned and operated by appellant. He further stated that appellant would inform him when the load he was to pick up would be illegal and that after he delivered it to appellant's stations he would be paid an additional $150.00 for each illegal load delivered.

■ Under these circumstances, we must conclude that the documents are sufficient to show that appellant is charged with committing acts in Texas intentionally resulting in a crime being committed in Louisiana and are therefore in compliance with Article 51.13, supra.

Appellant's first three grounds of error are overruled.[5]

In his last ground of error, appellant contends that the extradition warrant issued by the Governor of Texas is void because it fails to substantially recite the facts necessary for the validity of its issuance as required by § 7, Article 51.13, supra. Specifically, appellant alleges the extradition warrant is void because it recites therein on several occasions that appellant is a "fugitive" and refers to taking the "fugitive back to said State (Louisiana)." In support of this contention, appellant cites *People ex rel. Swanson v. Fitzsimmons*, 2 A.D.2d 235, 153 N.Y.S.2d 772 (N.Y.Sup.Ct.1956); *Ex parte Kaufman*, 73 S.D. 166, 39 N.W.2d 905 (1949); and *Stobie v. Barger*, 129 Colo. 222, 268 P.2d 409 (1954).

The rationale of these cases is that the laws of the United States and of the states impose a duty on the Governor of the asylum state to surrender a person charged in the demanding state with committing a crime in the demanding state and fleeing therefrom (i. e., a fugitive), while state statutes, such as § 6 of Article 51.13, supra, on the extradition of non-fugitives are discretionary. Appellant argues that a substantial probability exists that his extradition was ordered by the Governor of Texas based on the incorrect standard that the Governor had a duty to surrender appellant, contrary to the statutory discretion granted him.

We do not find appellant's argument to be persuasive. While the Executive Warrant issued by the Governor of Texas does refer to appellant as a "fugitive," the warrant clearly states that appellant:

". . . stands charged . . . with the crime of Felony Theft having committed an act or acts in this State which intentionally resulted in the commission of said crime in the State of Louisiana . . .."

The cases cited by appellant are distinguishable because in none of those cases did the extradition warrant aver that the act complained of occurred in the asylum state.

---

5. We would also conclude that the record before us would support "by a copy of an affidavit before a magistrate there, together with a copy of any warrant which issued thereupon" without regard to the information. See Article 51.13, §§ 3 and 6, supra.

In *People ex rel. Swanson v. Fitzsimmons* and *Stobie v. Barger*, both supra, the extradition warrants erroneously stated that the acts complained of occurred in the demanding state, and in *Ex parte Kaufman*, supra, the warrant simply stated that the petitioner was a fugitive from justice from the demanding state for failure to provide support for minor children.

■ The fact that the warrant here refers to appellant as a "fugitive" after clearly setting forth that the acts complained of occurred in Texas does not render the warrant void. We will treat and disregard such description as surplusage and find that such error, if any, in referring to appellant as a fugitive is harmless. Other jurisdictions which have addressed this issue are in accord with this approach. See *Moser v. Zaborac*, 514 P.2d 12 (Alaska Sup.Ct.1973); *State of Kansas v. Holeb*, 188 Neb. 319, 196 N.W.2d 387 (1972); *Clayton v. Wichael*, 258 Iowa 1037, 141 N.W.2d 538 (1966); and *People ex rel. Brenner v. Sain*, 29 Ill.2d 239, 193 N.E.2d 767 (1963).

In *Clayton v. Wichael*, supra, and *People ex rel. Brenner v. Sain*, supra, it was held that a description of petitioner in the Executive Warrant as a "fugitive" would be disregarded as surplusage where extradition was sought under a provision similar to § 6 of Article 51.13, supra.

■ Status as a fugitive is not essential to extradition. Although not within the strict definition of a "fugitive," one who commits an act in one state intentionally resulting in crime in another state and who thus seeks to abate the administration of justice in the state where the offense was perpetrated is, in essence, a "fugitive" from justice of such state for extradition purposes. *State of Kansas v̊. Holeb*, supra.

We therefore find that the extradition warrant does substantially recite the facts necessary for the validity of its issuance and overrule appellant's ground of error.

The judgment remanding the appellant to custody for extradition to Louisiana is affirmed.