423 So.2d 362 (1982)
STATE of Florida, Petitioner,
v.
Rogelio SOTO, Respondent.
No. 61747.
Supreme Court of Florida.
December 2, 1982.
Jim Smith, Atty. Gen. and Leonard L. Elias, Asst. Atty. Gen., Miami, for petitioner.
Sam W. Kleinfeld, Miami, for respondent.
EHRLICH, Justice.
This cause is before the Court pursuant to a question certified by the Third District Court of Appeal to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In August 1980, Rogelio Soto was indicted by a grand jury in Colonial Heights, Virginia and charged with three counts of conspiracy with another to possess with intent to distribute controlled substances in violation of Virginia Code section 18.2-256 (1950). The alleged conspiracy occurred when Soto contacted an individual in Virginia by telephone while he was present in Florida. Contained in the indictments are allegations that each offense occurred between May 7, 1980 and June 1, 1980 in the City of Colonial Heights. The indictments do not allege that any of the acts occurred in Florida or in a third state.
After the bills of indictment were returned, the Commonwealth's Attorney filed an application in the form of an affidavit with the Governor of Virginia requesting the return of Soto from the State of Florida. Initially alleging that Soto was a fugitive from justice, the affidavit further alleged that Soto "was in the State of Florida and conspired by telephone with a person in *363 this State at the time of the commission of said crimes." The Governor of Virginia then issued a requisition to the Governor of Florida demanding the surrender of Soto to the authorized Virginia agent for extradition. The demand stated that "[h]e committed acts in a State other than the State of Virginia ultimately resulting in the commission of a crime." In addition, the demand certified the authenticity of the application and indictments.
In response to the requisition, the Governor of Florida in November 1980 issued a warrant of rendition for Soto. Pursuant to the authority of the warrant, Soto was arrested and taken into custody in this state.
Soto petitioned the circuit court for a writ of habeas corpus. At the end of the hearing, the lower court denied the writ and remanded Soto to the custody of the State of Florida. An appeal was taken to the Third District Court of Appeal. Soto v. State, 409 So.2d 1123 (Fla. 3d DCA 1982). That court reversed based on the authority of Ennist v. Baden, 158 Fla. 141, 28 So.2d 160 (1946), and certified the question of "the continued desirability of according to the Uniform Interstate Extradition Act, Chapter 941, Part 1, a more restrictive construction, as reflected by the decision of Ennist v. Baden, supra, than is accorded the Act by other courts of last resort." 409 So.2d at 1125.
We answer the certified question in the negative and quash the decision of the district court of appeal.
This issue was previously before this Court in Ennist. In that case, Ennist was indicted in New York and charged with abandonment of his minor child in that state. An amended requisition recited that "[t]he accused, on the date said crime was committed, committed an act in a state other than the State of New York intentionally resulting in the commission of said crime in the State of New York, or that the accused was present in this State at the time of the commission of the crime and that he had thereafter fled from the justice of this state and may now be found in the State of Florida." 158 Fla. at 144, 28 So.2d at 161. Attached to the indictment were the certificate of the District Attorney of Duchess County, New York and an affidavit of Phoebe M. Ennist in support of the allegations of the indictment. It was clearly shown that the appellant was not within the State of New York at the time that the offense was alleged to have been committed and was not a fugitive from justice from the State of New York and was not subject to extradition as such. This Court held that sections 941.03 and 941.06, Florida Statutes (1941),[1] of the Florida Uniform Criminal Extradition Act were to be read in pari materia, i.e., "they require that the person sought to be extradited shall be charged by indictment, information or affidavit with *364 committing an act in this state or in a third state intentionally resulting in a crime in the state whose executive authority is making the demand." 158 Fla. at 146, 28 So.2d at 162-63.
In short, this Court held that the allegations that the person to be extradited committed an act in this state or in a third state intentionally resulting in a crime in the demanding state had to be contained in the charging document, and if not, such was fatally defective despite the fact that the allegations were contained in the supporting documents. We think this is an unwarranted narrow construction of the Act. We are of the view that these factual allegations can be supplied by the supporting documents, as they were in this case, i.e., the requisition warrant from Virginia, the rendition warrant from Florida, and the affidavit of the Commonwealth's prosecutor from the City of Colonial Heights. Section 941.06 provides that the Governor of Florida may surrender on demand of the governor of any other state, any person in Florida charged in such other state in the manner provided in section 941.03 with committing an act in Florida or in a third state, intentionally resulting in a crime in the demanding state. Section 941.03, as it relates to section 941.06, requires that the demand for extradition be in writing and accompanied by an authenticated copy of an indictment which substantially charges the person demanded with having committed a crime under the laws of the demanding state. An authenticated copy of the indictment charging petitioner with having committed a crime under the laws of Virginia was furnished here, and the accompanying documents alleged that petitioner had committed an act in Florida intentionally resulting in a crime in Virginia. In our opinion the statutory requirements of our extradition act were complied with.
The purpose of interstate extradition is to "furnish an expeditious and summary procedure for bringing suspects to trial in the state where the alleged offense was committed." Papas v. Brown, 88 Ill. App.3d 471, 476, 43 Ill.Dec. 568, 571, 410 N.E.2d 568, 571 (2d Dist. 1980). To further this purpose, several appellate courts in our sister states have held that "the better rule is to judge the substantiality of the `charge' for purposes of extradition by consideration of the indictments in conjunction with the supporting requisition documents." Greenbaum v. Darr, 220 Kan. 525, 528, 552 P.2d 993, 996 (1976). Accord, In re Cooper, 53 Cal.2d 772, 349 P.2d 956, 3 Cal. Rptr. 140, cert. denied and appeal dismissed, 364 U.S. 294, 81 S.Ct. 104, 5 L.Ed.2d 83 (1960); Papas v. Brown; Kansas v. Holeb, 188 Neb. 319, 196 N.W.2d 387 (1972); In re Harris, 170 Ohio St. 151, 163 N.E.2d 762 (1959); Ex parte Harrison, 568 S.W.2d 339 (Tex.Cr. App. 1978). We agree.
There is a practical rationale which strongly supports a less restrictive construction of the Act than this Court previously gave to it. This is best articulated by Justice Traynor of the Supreme Court of California in In Re Cooper:
Modern communication and transportation facilitate the commission of crimes across state lines. A criminal who acts in one state to commit crimes in another may pose a far more serious problem to the latter state than one who commits a crime there and then flees from justice. When the criminal who commits his crime entirely in one state flees, he ordinarily poses no threat of additional crimes therein; if extradition fails, there is only frustration of that state's interest in punishing him. In contrast, the criminal who operates from without the state's borders poses a continuing threat. Since his conduct may be undetected or apparently harmless in the state where he acts, the only effective impetus for prosecution may come from the state that suffers the harm. Far more divisive than a state's refusal to extradite a fugitive for a past offense would be its unwitting provision not only of a base of operation but of an asylum for those who commit crimes without being personally present at the place where their crimes are consummated.
53 Cal.2d at 776, 349 P.2d at 958, 3 Cal. Rptr. at 142.
*365 Our holding results in no prejudice to Soto. The indictments do substantially charge him with the commission of a crime under the laws of Virginia, which in addition to authentication, is all that the statute requires of the charging instrument. The supporting documents clearly apprise Soto of the claim that the acts with which he is being charged occurred in Florida, but intentionally resulted in the commission of a crime in Virginia. Soto would have us continue to rely on a hypertechnical rule that operates to void otherwise valid extraditions. We cannot do so in light of the purpose of the interstate extradition laws. As stated by the Supreme Court of Nebraska in Kansas v. Holeb:
Substantial rights of citizens must be protected, but constitutional and statutory provisions relating to interstate extradition must be liberally construed to effectuate their purpose, and courts of one state must avoid a view of their duties so narrow as to afford permanent asylum to offenders against laws of another state.
188 Neb. at 321-22, 196 N.W.2d at 389 (substantially quoting People ex rel. Robert v. Warden of New York City Prison, 114 N.Y.S.2d 13 (Sup.Ct. 1952)). Likewise, the California Supreme Court in Cooper has said:
Protection from unjustified extradition does not lie in reading into the extradition laws purely technical requirements that a forewarned prosecutor could easily meet, but in the sound judgment of the respective Governors charged with the administration of those laws.
53 Cal.2d at 779, 349 P.2d at 959, 3 Cal. Rptr. at 143.
We recede from Ennist to the extent that it is inconsistent herewith. We quash the decision of the district court of appeal and the case is remanded with the instructions that Soto be remanded to the custody of the State of Florida to be extradited to the State of Virginia.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
NOTES
[1] 941.03 Form of demand.  No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under s. 941.06, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by an authenticated copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of a warrant supported by an affidavit made before a committing magistrate of the demanding state; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction, or sentence must be authenticated by the executive authority making the demand.

941.06 Extradition of persons not present in demanding state at time of commission of crime.  The Governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in s. 941.03 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this chapter not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.